Florer, Treasurer, *et al. v.* Sheridan, Administratrix.

Filed Feb. 15, 1894.

———————◆———————

No. 16,371.

FLORER, TREASURER, ET AL. *v.* SHERIDAN, ADMINISTRATRIX.

TAXES.—*Omitted Property.*—*Assessment by County Auditor.*—*Insufficient Description.*—Where a county auditor attempts to add omitted property to the assessment list, the description of the omitted property as "moneys loaned" and "credits" is not a sufficient identification of the property upon which to base an assessment.

SAME.—*Deductions.*—*Constitutionality of Statute.*—*Assessment by County Auditor.*—*Should Allow Proper Deductions.*—Section 6332, R. S. 1881, providing for deducting *bona fide* indebtedness from the sum

Florer, Treasurer, *et al. v.* Sheridan, Administratrix.

of the credits, in ascertaining the amount of taxable property, is constitutional and valid; and where certain credits are sought to be assessed by the county auditor, as omitted property, the property-owner, or his representative, may show that such credits are entitled to be deducted from the total credits, notwithstanding such credits and debits were not placed on the schedule at the time of the assessment, and, upon such showing, the auditor shall allow the proper deductions.

Dissenting opinion by HOWARD, C. J.

From the Tippecanoe Circuit Court.

*R. P. Davidson, C. E. Lake* and *G. P. Haywood,* for appellants.

*G. D. Gougar* and *J. M. La Rue,* for appellee.

DAILEY, J.—The appellee, as plaintiff in the court below, brought her action against the appellants and Melville W. Miller and George P. Haywood to prevent the collection of certain taxes by appellant, Florer, treasurer of Tippecanoe county.

The original complaint was lost and another substituted; a demurrer was filed to the substituted complaint, by each defendant, for want of sufficient facts to constitute a cause of action, which was sustained as to defendants, Miller and Haywood, and plaintiff refusing to amend the complaint, judgment was rendered in their favor.

The demurrers of appellants, Florer and Barnes, were overruled, to which ruling they excepted, and, declining to answer further, the court rendered judgment for the plaintiff on the demurrers of Florer and Barnes to the complaint, perpetually enjoining the collection of the whole or any part of said taxes, and ordering the assessment mentioned in the complaint stricken from the tax duplicate. The defendants, Florer and Barnes, prayed an appeal.

The errors complained of arise upon the ruling of the court on the separate demurrers of each defendant.

The assignment of errors contains two specifications:

First. The court erred in overruling the separate demurrer of Thomas A. Florer, treasurer of Tippecanoe county, Indiana, to the substituted complaint.

Second. The court erred in overruling the separate demurrer of Thomas J. Barnes, auditor of Tippecanoe county, Indiana, to the substituted complaint.

The complaint, in substance, alleges that on the 8th day of February, 1890, the defendants, Melville W. Miller and George P. Haywood, filed in the office of said Barnes, auditor of Tippecanoe county, Indiana, a paper giving to said auditor the information that Alexander L. Sheridan, then deceased, was, during the years 1884 to 1889, inclusive, a citizen of the city of La Fayette and Tippecanoe county, and was the owner of certain property, subject to taxation, for said years, which had not been listed for taxation and by reason of which the property had been omitted, and no taxes paid thereon; that said auditor, acting upon such information, gave notice to the appellee, who was, at the time of filing the information, the administratrix of decedent's estate, that he intended to place said property on the tax duplicate, and required her to appear on the 22d day of March, 1890, and show cause, if she could, why such assessment should not be made; that pursuant to said notice appellee called upon said auditor at his office and informed him that decedent, in his lifetime, had no money loaned, but that for and during the years mentioned he did own $8,800 of credits, but that the same had not been listed by the decedent, for taxation, because, during said time, he was in debt to others in excess of the credits owned by him; that said auditor, refusing to investigate further as to the truth of the statements made by said administratrix, but, being advised as to the law by said Miller and Haywood, claimed that as the credits and debts were not placed on

the schedule, at the time of the assessment of the decedent, the deduction could not then be made and the property should be placed on the tax duplicate and taxed as other property, and he thereupon assessed said credits and placed the amounts and value on the tax duplicates; that afterwards, said duplicates being in the hands of said Florer as treasurer of said county, he was about to proceed to the collection of said taxes out of the property of the decedent. Prayer that he be enjoined from so doing.

The complaint further avers that said decedent was the owner of certain real estate, in said county, and inasmuch as said taxes had been wrongfully assessed and placed on said tax duplicate, they were an apparent lien on said land and a claim against said estate, and asks that they be stricken from said duplicate. There is also an allegation of a want of description of the omitted property.

It will be observed that this action arose by reason of the appellant, Barnes, as auditor of Tippecanoe county, by virtue of the authority given him as such auditor by section 1, page 341, Acts of 1889, having assessed and placed on the tax duplicate of said county, for taxes, for the years 1884 to 1889, inclusive, certain credits described in the complaint, in the hands of the appellee, administratrix, as omitted property, the same having been left out by the decedent of the appellee for said years, and by reason of the treasurer of said county being about to enforce the collection of said taxes.

The act of March 9, 1889, *supra*, amending section 6416, R. S. of 1881, reads: "Whenever any county auditor shall discover or receive credible information, or if he shall have reason to believe, that any real or personal property has, from any cause, been omitted in whole or in part in the assessment of any year or number of

years from the assessment-book or from the tax duplicate, he shall proceed to correct the tax duplicate and add such property thereto, with the proper valuation, and charge such property and the owner thereof with the proper amount of taxes thereon, to enable him to do which he is invested with all the powers of assessors under this act. *But before making such correction* or addition, if the person claiming to own such property, or occupying it, or in possession thereof, reside in the county and be not present, he shall give such person notice in writing of his intention to add such property to the tax duplicate, describing it in general terms, and requiring such person to appear before him, at his office, at a specified time within ten days after giving such notice, to show cause, if any, why such property should not be added to the tax duplicate; and if the party so notified do not appear, or if he appear, and fail to show any good and sufficient cause why such assessment should not be made, the same shall be made,'' etc.

There is no doubt that, under the provisions of this section the appellee had a right to show cause, if any existed, why such credit should not be annexed to the tax duplicate to increase the liability of the estate, unless the clause in section 6332, R. S. of 1881, is unconstitutional, which stipulates that: ``In making up the amount of credits which any person is required to list, for himself or for any other person, company, or corporation, he shall be entitled to deduct from the gross amount of credits the amount of all *bona fide* debts owing by such person, company, or corporation, to any other person, company, or corporation, for a consideration received.''

In *City of Indianapolis* v. *Vajen*, 111 Ind. 240, 243, this court said: ``There is no controversy but that, under the ruling in *Wasson* v. *First Nat'l Bank*, etc., 107 Ind. 206,

the plaintiff was entitled to deduct his *bona fide* indebtedness from the value of his bank stock, if proper steps to that end had been taken before the payment of the tax.''

From the facts averred in the complaint, it is evident that whatever appellee might have done by way of making statements before the auditor, when she appeared before him, in response to notice to show cause, etc., or in whatever form she might have presented her claim for deductions, it would, in any event, have been unavailing, although she was notified to appear for that purpose, because it is alleged that he refused to allow deductions.

The complaint shows that Miller and Haywood gave information to the auditor in a paper partly written and partly printed, that the decedent, in his lifetime, had omitted to list ''moneys loaned'' and ''credits,'' for the time stated, but described no item of omitted property otherwise than as moneys loaned or credits, and that upon this information being filed, the auditor issued a notice to the appellee, in which no property was described as omitted from taxation, except the amounts of ''moneys loaned'' and ''credits'' were given, but to whom the moneys had been loaned, or what the credits were, is not stated in the notice or elsewhere.

It has been decided by this court, in *Florer, Treas.,* v. *Sherwood, Admr.,* 128 Ind. 495, that this description is not sufficient, and we still adhere to that opinion. The court said: ''But money loaned, and credits due, may or may not be of their face value, depending on many contingencies, and to justify an assessment by the auditor upon property of that character he must know of specific loans and of specific credits which have been omitted, and upon which valuation may be placed.''

Especially is this principle found to be correct when

we remember that all taxation, in this State, is upon values, and none upon amounts.

In *Woll, Treas.*, v. *Thomas, Admr.*, 1 Ind. App. 232, the court said: "Our conclusion is that the auditor had no right, under the law in force at that time (from 1883 to 1888), to assess any property as omitted, except distinct, definite and recognizable articles which had not been listed and properly appraised   *   *   by the assessor."

In construing section 6332, *supra*, concerning the rights of taxpayers, this court, in *Matter* v. *Campbell, Treas.*, 71 Ind. 512 (517), said: "We are clearly of the opinion that, under the assessment laws of this State, the resident taxpayer has the right, in listing his personal property for taxation, to deduct from his 'money at interest, either within or without the State,' and 'all other demands,' together constituting the 'total amount of all credits,' owned and held by him, his *bona fide* indebtedness, and to list or give in the surplus or remainder only, for the purpose of taxation."

If the assessor refuse to allow his credits, the taxpayer may recover back the taxes. *City of Indianapolis* v. *Vajen, supra.*

There is an allegation in the complaint that there was no concealment from the assessor, and the presumption is that he did his duty. In what we say, we do not want to be understood as approving the "loose-jointed and slip-shod" method of listing property adopted by the decedent, and feel that the statute should be strictly complied with, yet, when all the sections of the tax law are construed together, we are convinced that the right to correct the list existed when the appellee appeared before the auditor in obedience to the notice he gave her to show cause why the addition should not be made. But a more potent question presents itself for our consideration.

The constitutionality of the clause in section 6332, *supra*, deducting debts, is assailed by the learned and ingenious counsel for the appellant, with much vigor, although a provision of this kind has existed in our tax laws for many years. We have looked diligently, but in vain, for a single case in which its validity has ever been questioned in this court.

The attack is upon two grounds:

First. Because such provision, as to deductions, violates the principles of fundamental law "for a uniform and equal rate of assessment for taxation."

Second. Because the exemptions which the General Assembly is authorized to make, do not include the class of property called credits.

Section 1, article 10, of the Constitution of Indiana, being section 193, R. S. 1881, authorizes the law-making power to "provide, by law, for a uniform and equal rate of assessment and taxation," and that it "shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious or charitable purposes, as may be specially exempted by law."

In support of counsel's contention, they urge that when the Legislature enacts a law for the assessment and taxation of property, it must not only have an equal rate of assessment for all property for the same particular purpose, but there must also be uniformity as to the matter of species of property taxed; that all property must be affected alike, unless it comes under the exceptions in the latter clause of the section, and there must be no inconsistency; that if there is an exception of any property from taxation, this uniformity does not exist, unless the law thus exempting the property extends to and includes all that kind or species of property, and that

"money at interest" is construed to mean property ( *Wasson* v. *First Nat'l Bank, etc., supra* ); that as moneyed capital, credits are of the most valuable of property, therefore, any law providing for an exemption of such property makes provision for exempting from taxation, of not only a species of property the most valuable, but also of so large an amount that the courts can judicially know that the quantity is sufficient to form a large and material part of the moneyed capital of the State; that deductions are exemptions, and credits are property, and as they are not taxed, therefore, credits are exemptions; that the taxing power is inherent in every sovereignty, and there can be no presumption in favor of its relinquishment, surrender, or abatement; that the whole community is interested in retaining the power of taxation undiminished, and for this reason the laws are strictly construed against exemptions; that if it could be conceded that deductions of debts from credits were not strictly exemptions, but only an equalizing of values, the same result is reached as though the property were excluded; that the law of deduction, from any standpoint, is unfair, unequal, unjust, oppressive and pernicious, because it increases the tax of the poor man, who is in debt for his real or personal estate, and not able to own credits, and that it is the property, in whatever form it may exist, that the government reaches out for to make it contribute for its support, and not the individual who owns it.

In other words, counsel assume that it is the real worth of the property in existence, and not the net or real worth of the individual, that is made the basis of valuation under the fundamental law of this State.

There is no more difficult problem than that of levying direct taxes so as to make them just and equitable in every respect. If unequal and unjust, the burden is

readily noticed, and one chief reason assigned by those who favor resorting to indirect taxes is that this method enables the government, in the language of Tergot, "to pluck the goose without making it cry out," since those who pay do not perceive, or at least do not reflect, that a part of what they pay as a price is really paid as a tax. Our mode of raising revenue has been to levy annual taxes on the value of the real and personal property, with limited exceptions. This plan seems, at first blush, to be just, and in that belief it has been steadily adhered to, notwithstanding the many and serious difficulties and objections attending the taxation of personal property. For instance, personalty can not be assessed without inquisitorial process of some kind instituted for the purpose of ascertaining that which is not open to public inspection, and which many individuals, through their avarice, except under the compulsion of such process, would not consent to disclose.

Statutes have recognized the difficulty, and provided a list to be presented by the taxpayer under oath, leaving the person taxed to reduce the amount by his own oath, if he shall see fit, and be able to do so. It has been said that this is objectionable, as holding out a temptation to false swearing in matters where a false oath would be difficult, if not impossible, of detection, and that the assessment of personalty creates constant incentives to defraud the State by concealing the knowledge of everything which the taxpayer believes can not be discovered. It is also claimed, by many, that the taxation of personal property is unjust, in that it discriminates against residents and in favor of nonresidents, and is an inducement to citizens to establish residences abroad. It also leads to duplicate taxation, in various ways.

Cooley on Taxation (1876), page 29, says: "To make it just, it is generally thought necessary that the taxpayer's

debts should be deducted: and this complicates the dif-
ficulty of ascertaining what his estate is, and leaves
every man, in effect, to make his own assessment, or
subjects him to the arbitrary and capricious action of the
assessors.''

It has always been that when the law seeks to tax
lands and personalty with equality, the land pays the
greater proportion of the tax, because this can all be
reached and all taxed.   Real estate is open to constant
public observation and inspection, and no frauds or
evasions can conceal it from view.   Taxes are defined to
be ''the enforced proportional contributions of persons
and property, levied by the authority of the State for the
support of the government, and for all public needs.''

The citizen and the property-owner owes to the gov-
ernment the duty to pay taxes, and he is supposed to be
compensated in the protection it affords to his life, lib-
erty, and property.   Cooley on Taxation, pp. 1 and 2.

The same author says, what is aimed at is not taxes
strictly just, but such taxes as will best subserve the
welfare of the political society.   The power of taxation
is not judicial.   The Legislature must determine all
questions of State necessity, discretion or policy involved
in ordering and apportioning a tax.   The judicial tri-
bunals have no concern with the prudence or wisdom of
legislation not inconsistent with organic law.   Theo-
retically, tax laws should be framed with a view to ap-
portioning the burdens of government, so that each per-
son enjoying its protection shall be required to contribute
as much as his reasonable proportion, and no more.   The
tax that comes nearest to accomplishing this is, in
theory, most nearly perfect.   Cooley on Taxation, 124.

''Perfect equality in the assessment of taxes   *   *   is
unattainable.   Approximation to it is all that can be
had.   Under any system of taxation, however wisely and

carefully framed, a disproportionate share of the public burdens will be thrown on certain kinds of property, because they are visible and tangible, while others are of a nature to elude vigilance. It is only where statutes are passed which impose taxes on false and unjust principles, or produce gross inequality, so that they can not be deemed, in any just sense proportional in their effect on those who are to bear the public charges, that courts can interpose and arrest the course of legislation by declaring such enactments void.'' Cooley on Taxation, 127.

Perfect equal taxation will remain an unattainable good as long as laws and government and man are imperfect. There are instances, in this State, where duplicate taxes are imposed, or, rather, double taxation of the same property to two individuals; as where the purchaser of property on credit is taxed on its full value, while the seller is taxed to the same amount on the debt. In such case the decisions are uniform in holding that taxation is not invalid, because of any such unequal consequences. This results from the reasoning stated that any possible system of taxation must inevitably produce unequal and unjust effects in individual instances; and if inequality in result must defeat the general law, then taxation becomes impossible. Such laws must be practical, and they only forbid that one party shall pay a double tax on the same property. We are aided but little by the decisions of other courts in the consideration of the question presented by appellant, for the reason that the fundamental law on which the opinions are based is quite dissimilar.

The constitution of the State of Ohio provides that ''laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint stock companies or otherwise; and, also, all real and personal property according to its true value in money,

but burying grounds, etc., may be exempt by law from taxation."

This provision renders it imperative that all the property of which exemption is not permitted by it shall be taxed and precludes any other exemptions than those indicated.

In *Exchange Bank of Columbus* v. *Hines,* 3 Ohio St. 1, the court says: "Obligations for the payment of money are taxed by value, and if of no value, are not taxable."

The constitution of Illinois differs from our own in that it provides that the "General Assembly shall provide for levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to his or her property," and that "the corporate authorities, etc., may be vested with power to assess and collect taxes for corporate purposes, such taxes to be uniform with respect to persons and property within the jurisdiction of the body imposing the same."

"These provisions preclude discrimination in favor of or against any classes of property or persons whatsoever; they require the taxation of loans or any other credits, these being property as much as lands or chattels in possession." *President and Trustees* v. *McConnel,* 12 Ill. 138; *People* v. *Worthington,* 21 Ill. 170.

In California, as the constitution requires "all property" to be "taxed in proportion to its value," it is held not competent to exempt solvent debts from taxation. *People* v. *McCreery,* 34 Cal. 432; *People* v. *Gerke,* 35 Cal. 677; *People* v. *Black Diamond Co.,* 37 Cal. 54; *People* v. *Whartenby,* 38 Cal. 461.

It was evidently the object of the convention, in the adoption of section 1, article 10, *supra,* and other provisions of the constitution of this State, to devise a system for the assessment and levy of taxes that would distribute these burdens among those liable to them, upon

principles of uniformity, equality and justice, and to secure this object the General Assembly is required to "prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting," etc.

The Legislature had a right, under its provisions, to equalize these burdens by a regulation which would tend to secure a just valuation. The plan adopted was to ascertain the just value of the credits after deducting the indebtedness. Credits are, by the constitution, property, and as such are to be taxed. Their just value is to be ascertained by subtracting the *bona fide* indebtedness from the gross amount of the notes, accounts and other choses in action, and the balance is to be returned as belonging to the individual. Surely, the difference thus found is the precise amount and just value of the credits of the party in the legal and proper sense of the term.

Section 1, article 10, *supra*, does not say the gross amount of all notes, accounts, and other choses in action shall be taxed, and we can not so construe it without perverting its language and obvious meaning.

Consider for a moment its practical operation under such a construction. A. has an account against B. for $1,000, or a debt against him for a like amount, evidenced by a promissory note. B. holds an account or promissory note, evidencing a *bona fide* indebtedness against A. for the same sum of money. Equity, except where one of the parties is insolvent, treats these claims as compensating each other. Neither owes nor could recover, in an action, against the other, and yet, if appellant's theory is right, $2,000 must be placed upon the tax duplicate, because the holders never met and settled or surrendered their claims. In such case, each is a chose in action held by the party to whom it belongs, and must, under the contention of counsel, be returned to the assessor,

Florer, Treasurer, *et al. v.* Sheridan, Administratrix.

and yet it is obvious that neither, as against the other, has a penny of credit, either in money or just value. If the owner is taxed upon such credit it is upon fiction. The tax duplicate, in this way, would be increased, but not from property of value in the State.

We think the constitution requires that property, wealth, substantial values shall be taxed, but not imaginary values. As against an insolvent maker, the true value in money of the credit can only be taxed and so it is where a man has both credits and debts, if there is no balance there is no sum of money due, however large the items of account upon each side may be. The items of credit upon the one side are of no value, as far as they are balanced by the debts upon the other side. If the balance is in favor of one creditor this is the exact sum of money due him as against all others, and it is the true value of his credits. Deductions and exemptions are two separate and distinct things, having no connection. A deduction is the taking of the subtrahend from the minuend. It is a subtraction. Exemption is an immunity or privilege—it is freedom from a charge of burden to which others are subject.

We think the court did not err in overruling the demurrers of the defendants, Florer and Barnes, to the complaint.

The judgment of the court below is affirmed.

Filed Feb. 13, 1894.

## DISSENTING OPINION.

HOWARD, C. J.—I am constrained to withhold my concurrence in so much of the foregoing opinion as holds that the constitution permits the enactment of a law which authorizes the deduction of debits from credits in the giving in of notes, choses in action, etc., for taxation. I am of opinion that all the property of the State,

including all credits, and save only such property as is expressly exempted by the constitution, should be subject to equal and uniform taxation.

Filed Feb. 13, 1894.