LANCASTER COUNTY ET AL. V. JOHN W. MCDONALD.

FILED APRIL 5, 1905.   No. 14,088.

1. Commissioners' Opinions. Opinions prepared by the commissioners of this court and published officially, are in all respects to be regarded as the opinions of the court. It is immaterial whether a commissioner or one of the judges formulates the opinion of the court.

2. Dicta. The determination of a matter which is involved in the litigation and discussed at the bar is not to be regarded as mere dictum, even though it is only indirectly involved in the decision of the question upon which the case turns.

3. Taxation: ASSESSMENT. The word credits as used in section 28, article I, chapter 77, Compiled Statutes, 1903, means net credits. The indebtedness of the taxpayer may be deducted from gross credits to find the true value of credits for assessment.

4. ———: ———. The statute distinguishes between items of property to be scheduled for taxation. The other items named in the schedule are not to be considered as credits so as to allow indebtedness to be deducted therefrom. Notes and mortgages which represent moneys loaned or invested are not subject to such deduction.

ERROR to the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Reversed.*

*James L. Caldwell, F. M. Tyrrell* and *Charles E. Matson,* for plaintiffs in error.

*S. L. Geisthardt, contra.*

SEDGWICK, J.

The principal question in this case involves the construc- of the word "credits," as used in the revenue law (ch. 77, Compiled Statutes, 1903; Ann. St. 10400-10896). In listing his personal property for assessment in 1904, the defendant in error included an item designated by him as "bills receivable," amounting to $13,541.82, and an item of $32,904.85, represented by notes and real estate mortgages. He claimed the right to offset and deduct from these items debts owing by him. The assessor refused to allow this claim. Objections to this assessment were duly filed with the county board of equalization and were overruled, the board refusing to allow the indebtedness to be deducted from these items. Upon appeal to the district court this action of the board of equalization was reversed, and these proceedings bring this decision of the district court here for review. In *State v. Fleming,* 70 Neb. 523, 529, this court said:

"In making a return of his taxable property under the provisions of chapter 73 of the laws of 1903 the taxpayer may deduct from the credits due him all just debts by him owing at the time of such return."

1. In the first attack upon this proposition, it is con- tended that as this language is used in the syllabus pre- pared by one of the commissioners, and is fortified by reasons given in his opinion only, it is not entitled to the same consideration as are decisions of the court. There were two opinions in that case; one by the chief justice and the other by Mr. Commissioner DUFFIE, and it is suggested that there is language in the opinion of the court itself which indicates that the opinion of the commissioner did not in all respects have the sanction of the court. The opinions prepared by the commissioners and published offi- cially are in all respects to be regarded as the opinions of the court. Both opinions expressed the judgment of the court, and it is immaterial whether a commissioner or one of the judges formulated the opinion of the court.

2. It is next urged that the matter determined in the paragraph of the syllabus above quoted was not necessary to a determination of the case and is therefore to be regarded as dictum only. It appears from the opinion that it was contended in that case that the whole of the revenue act of 1903 was invalid because many of its provisions, which it was contended were of such importance that they should be regarded as inducements to the act, were in conflict with the constitution; and in that connection it was contended that the meaning of the act is that the gross credits of the taxpayer should be assessed for taxation, and that no reductions should be made on account of his indebtedness. This it was urged was so great an injustice as to be impossible of execution. It was in answer to this argument that the opinion undertook to show that by the term "credits," as used in the statute, was meant net credits; and probably in this view the discussion was justified and the conclusion reached not entirely dictum.

3. It is insisted that the conclusion upon this point announced in the opinion referred to is unsound; that it does not announce a proper construction of the statute, and should therefore not be adhered to. The plaintiff in error contends for what is said to be a literal construction of the statute. The words, it is said, are to be given their plain and ordinary meaning, and that the statute prescribes that credits must be listed for taxation, and defines the word "credits" to include "every demand for money, labor or other valuable thing, whether due or to become due." This construction of the statute was considered in the opinion above referred to, and the result of such a construction was made plain by a quotation from *Florer v. Sheridan,* 137 Ind. 28, 36 N. E. 365, 23 L. R. A. 278, as follows:

"Consider for a moment its practical operation under such a construction. A has an account against B for $1,000, or a debt against him for a like amount, evidenced by a promissory note. B holds an account or promissory note, evidencing a *bona fide* indebtedness against A for the

same sum of money. Equity, except where one of the parties is insolvent, treats these claims as compensating each other. Neither owes nor could recover, in an action, against the other, and yet, if appellant's theory is right, $2,000 must be placed upon the tax duplicate, because the holders never met and settled or surrendered their claims. In such case, each is a chose in action held by the party to whom it belongs, and must, under the contention of counsel, be returned to the assessor, and yet it is obvious that neither, as against the other, has a penny of credit, either in money or just value. If the owner is taxed upon such credit it is upon fiction. The tax duplicate in this way would be increased, but not from property of value in the state." The court concluded: "Credits are, by the constitution, property, and as such are to be taxed. Their just value is to be ascertained by subtracting the *bona fide* indebtedness from the gross amount of the notes, accounts and other ·choses in action, and the balance is to be returned as belonging to the individual. Surely, the difference thus found is the precise amount and just value of the credits of the party in the legal and proper sense of the term. Section 1, article 10, of the constitution does not say the gross amount of all notes, accounts and other choses in action shall be taxed, and we cannot so construe it without perverting its language and obvious meaning."

It will not be contended that the proper construction of our statute would require that, in the case supposed in the above quotation, A and B would both be taxed upon the $1,000 claim which each was supposed to have held against the other. It follows that the literal construction contended for cannot be given the statute, and we must look to the whole enactment of the legislature, and determine by a consideration and comparison of all its provisions what was intended by the legislature to be taxed in the provision requiring credits to be listed.

The 5th section of the act defines the word "credit": "The word 'credit' includes every demand for money, labor or other valuable thing, **whether due** or to become due." ·

Section 3 defines property: "The word 'property' includes every kind of property, tangible or intangible, subject to ownership." The statute as well as the constitution requires that all property shall be taxed. The word "property" as above defined includes also credits, and these and other general definitions given by the statute are to be taken in connection with, and are controlled by, the meaning plainly intended to be given to these terms in special provisions which we are called upon to construe. Section 28 provides for the listing of property for assesment: "All his moneys, credits, bonds, or stocks, shares of stock of joint stock or other companies, when the capital stock of such company is not assessed in this state, moneys loaned or invested, annuities, franchises, royalties, and all other personal property." Moneys loaned or invested and bonds and stocks are specified, but they are clearly forms of credit and there must be some reason for specifying them in this provision. If by the term "credits" in this schedule the legislature intended the thing defined as "credit" in section 5—"Every demand for money, labor or other valuable thing, whether due or to become due"—and it was intended that gross credits should be taxed, it would certainly have been wholly unnecessary to have included also "moneys loaned or invested." If we consider that the legislature intended to classify credits, then the purpose of this provision in regard to the schedule becomes apparent. It is suggested in the opinion referred to that merchants might be largely indebted for the stock carried by them, and at the same time have credits due them from customers for amounts approximately the value of their stock. Goods bought upon credit might also be sold upon credit, and the amount of such credit held by the merchants might largely exceed the moneyed capital of his business. It seems reasonable that the legislature should have intended to allow such credits and debts to offset each other, and at the same time to require that money which was loaned or invested as a speculation should be taxed without the right of deducting the general indebtedness of the taxpayer.

The constitution of 1851 of Ohio provided that "laws shall be passed taxing by a uniform rule all moneys, credits," etc. This was a positive requirement that all credits should be taxed, and the supreme court of that state construed that language of the constitution to mean that debts could not be deducted from moneys and credits, and that a statute attempting to allow such deduction was therefore void. One of the judges dissented from this proposition and maintained that credits should be ascertained by deducting liabilities from claims and demands. *Exchange Bank v. Hines,* 3 Ohio St. 1. In *Latimer, Colburn & Lupton v. Morgan,* 6 Ohio St. 279, that court adhered to its conclusion that "credits" in the constitution meant gross credits, and that liabilities could not be deducted therefrom. Soon afterwards the legislature by statute declared that the term "credit" meant "the excess of the sum of all legal claims and demands * * * over and above the sum of the legal *bona fide* debts owing by such person." It is said by that court in *Hubbard v. Brush,* 61 Ohio St. 252, 55 N. E. 829, that this legislative definition of the word "credit" has been acquiesced in for more than forty years, "and *Exchange Bank v. Hines,* in as far as it denied the right to deduct liabilities from claims and demands, has been ignored"; and, after stating that the determination of the case depended upon the meaning of the word "credits" as it appears in the constitution, and that the power to determine that meaning devolved upon the court and not upon the legislature, the court said:

"The word 'credits' in the connection in which it is used in the constitution is not made at all clear by a resort to the lexicographers. It is apparent, however, that if the framers of the constitution had intended to specifically tax book accounts, promissory notes and the like, it would have only required the addition of a few words, not at all incompatible with the brevity required in such instruments, to manifest that intention. The ease with which it could have been done gives to the omission a signification entitled to some consideration. The administration of the

laws governing taxation has developed the difficulties, if not the impracticability, of permitting the subtraction of debts and liabilities of the owner of real estate and tangible personal property from its value for taxation. Though even here there are those who contend that the deduction should be made.

The difficulties, however, attending a deduction of liabilities from claims and demands have not proved formidable, since the practice was authorized by the legislature, and the practice itself has received general approbation. For these considerations, not to specify others, we are of opinion that the legislative declaration is in accord with the constitution, and therefore hold that the corporation involved in this controversy rightfully, in listing its property for taxation, deducted its liabilities from its claims and demands."

In that case, and in many others, the word "credits" in statutes and constitutional provisions requiring "credits" to be taxed is held to mean net credits. We think the reasoning in *State v. Fleming, supra,* upon this point is sound, and is supported by the authorities there cited. The conclusion is that the legislature intended that moneys loaned or invested shall be taxed without deductions on account of indebtedness, and the "credits" that are to be taxed are the true credits. The taxable credits of an individual or business is the amount that can be realized upon an adjustment of accounts. To determine the real credits of a business, account must be taken of its liabilities. The statute names items that are ordinarily considered as credits; that are not to be so considered for the purpose of ascertaining the taxable credits. All other items of property required to be listed are distinguished from credits for the purpose of taxation, and are to be listed at their true value without deductions for indebtedness.

4. Were the items in question credits within the meaning of section 28, or were they bonds or money loaned or invested and so not subject to reduction on account of in-

debtedness? In the district court the cause was determined upon a demurrer to the petition. The holding was that this petition stated sufficient facts to entitle the appellant there to have his assessment changed by deducting the amounts of his debts from the credits listed by him. The allegation of the petition is that these credits consist of notes and mortgages of the value of $56,385.05. There is a schedule of these notes and mortgages attached, but there is no allegation and nothing to show the origin and character of these notes and mortgages. If they represented moneys loaned or invested, within the meaning of section 28, they are not credits within the meaning of that section, and being specifically named for taxation, they are not subject to reduction on account of general indebtedness. The allegation of the petition which, after stating the indebtedness to be deducted, is in these words: "So that the true and actual value of the credits of all kinds belonging to the appellant and subject to taxation was nothing"—is the statement of a conclusion only, and is not confessed by the demurrer, which admits only those matters of fact which are traversable and are well pleaded. The question whether a loan broker, who has both credits and debits arising from the ordinary transaction of his business, might offset such debits against the credits, to find the true value of his credits, is not raised by the petition. The demurrer to the petition should have been sustained. The judgment of the district court is therefore reversed and the cause remanded for further proceedings.

REVERSED.

BARNES, J., dissenting.

I concur in the reversal of the judgment of the trial court, and in the rule announced in the prevailing opinion; that for the purposes of taxation debts cannot be set off against notes and mortgages which represent moneys loaned or invested—but dissent from the conclusion an-

nounced therein that the taxpayer in making up his credits for taxation may deduct therefrom the amount of his indebtedness, and that the word "credits" as used in our present revenue law means "net credits."

It appears that the defendant included in his schedule of personal property, which he delivered to the assessor of Lancaster county for the purpose of taxation for the year 1904, as credits, unsecured bills receivable, amounting to $13,541.82, and notes secured by mortgages, amounting to $32,904.85. He also included therein a list of debts owing by him to certain individuals and corporations, amounting to $70,700, and sought to have such indebtedness set off against his credits, so that he would entirely escape taxation on those items. The county board of equalization refused to grant his request, and ordered that his credits be assessed and taxed at one-fifth of the value thereof as set forth in his schedule. He thereupon appealed from said order, and filed his petition in the district court setting forth the foregoing facts more fully and at large, to which petition the plaintiff filed a general demurrer. The court overruled the demurrer and rendered a judgment for the defendant, by which the order of the board of equalization was reversed, and defendant was allowed to set off his debts against the credits so listed by him for taxation.

By the prosecution of this proceeding in error the plaintiff presents for our decision the question, can a taxpayer, under our present revenue law, set off his debts against the credits which he is required to list for taxation, and only pay taxes on the excess of such credits, if any, over and above the amount of his indebtedness? The revenue act of 1903 (sec. 12, art. 1, ch. 77, Comp. St., Ann. St. 10411) provides: "All property in this state not expressly exempt therefrom, shall be subject to taxation, and shall be valued at its actual value which shall be entered opposite each item and shall be assessed at twenty per cent. of such actual value. Such assessed value shall be entered in a separate column opposite each item, and shall be taken and considered as the taxable value of such property, and

the value at which it shall be listed and upon which the levy shall be made. Actual value as used in this act shall mean its value in the market in the ordinary course of trade." By section 28 it is provided: "Personal property shall be listed in the manner following: First. Every person of full age and sound mind, being a resident of this state, shall list all of his moneys, credits, bonds, or stocks, shares of stock of joint stock or other companies, when the capital stock of such company is not assessed in this state, moneys loaned or invested, annuities, franchises, royalties, and all other personal property." The section which in part is last above quoted is a literal copy of section 7 of the revenue law of 1879, which was in force at the time of the adoption of the present act. The former law, however, contained the following: "Sec. 27. In making up the amount of credits which any person is required to list for himself, or for any other person, company, or corporation, he shall be entitled to deduct from the gross amount of credits the amount of all *bona fide* debts owing by such person, company, or corporation, to any other person, company, or corporation, for a consideration received; but no acknowledgment of indebtedness not founded on actual consideration, believed when received to have been adequate, and no such acknowledgment made for the purpose of being so deducted, shall be considered a debt within the meaning of this section." An examination of the present law discloses that the section last quoted is wholly omitted therefrom; neither does it contain any provisions of a similar nature. I therefore conclude that, by the adoption of the present law, the legislature intended that the taxpayer shall no longer be allowed to deduct his debts from the credits which he is required to list for the purpose of taxation. This thought is strengthened by the fact that it is a matter of common knowledge that, under the former law, much property in this state entirely escaped taxation, and its provisions were wholly inadequate to produce a proper and sufficient amount of revenue to pay the current expenses of the state and its various

municipal subdivisions.   So it seems apparent that the
provision for deducting debts from credits was purposely
omitted from the present act.

The prevailing opinion follows the rule announced by
Commissioner DUFFIE in *State v. Fleming,* 70 Neb. 523,
529, and construes the present revenue law to permit the
taxpayer to deduct from the credits due him all just debts
owing by him at the time of the assessment; and it is rea-
sonable to believe that the district court took that view of
the matter, and was governed by the opinion of the com-
missioner, which was filed and published with the opinion
written by Chief Justice SULLIVAN in that case.   By an
examination of the opinion of the chief justice it appears
to have been expressly held by the court that the question
here presented was not involved in that case.   So the con-
clusion of the commissioner that the word "credits" in the
present revenue law should be held to mean "net credits"
is mere *obiter dictum,* and in the present case should have
been treated as such.   *Obiter dictum* is a mere observation
by a judge on a legal question suggested by a case before
him, but not arising in such a manner as to require decision
by him.   It is therefore not binding as a precedent on the
other judges or the court, although it may be entitled to
more or less respect; and, while I have great respect for
the learning and ability of the commissioner, yet it would
seem that his conclusions, as expressed in his opinion, are
not based on sound premises.   The question involved in
that case was whether the conditions imposed by the pres-
sent revenue act on foreign corporations seeking the priv-
ilege of doing business in this state were valid.   It was
sought by counsel to obtain a construction of the law rela-
tive to the question now involved in this controversy, but
the chief justice said:

"This court cannot attempt, prior to an actual contro-
versy arising, to direct the officers charged with the en-
forcement of a law relating to their duty in putting it in
operation."

Notwithstanding this statement it was said in the opin-
ion of the commissioner:

"In making a return of his taxable property under the provisions of chapter 73 of the laws of 1903 the taxpayer may deduct from the credits due him all just debts by him owing at the time of such return."

And it seems clear that such statement was *obiter*. It appears that *State v. Fleming* and the prevailing opinion are based on *Florer v. Sheridan*, 137 Ind. 28, 36 N. E. 365; 23 L. R. A. 278; *Latimer v. Morgan*, 6 Ohio St. 279, and *Hubbard v. Brush*, 61 Ohio St. 252, 55 N. E. 829. In *Florer v. Sheridan* the only question involved was whether a statute of the state of Indiana, by which it was provided that the taxpayer might deduct his indebtedness from his credits and return the excess of credits, if any, for taxation, was constitutional. It is not authority in this case for the reason that the Indiana statute expressly provided for the deduction of debts from credits, while our present revenue law contains no such provision.

Coming now to the consideration of the Ohio cases cited to support the opinion of the majority, I find that the question of the taxation of credits was first brought to that court in *Exchange Bank v. Hines*, 3 Ohio St. 1. It was insisted by the bank that it had the right, under section 10 of the tax law of that state, adopted April 13, 1852, to deduct its liabilities from its credits which it was required to list for taxation. The court held that the provision of the statute which authorized such deduction was repugnant to the section of the existing constitution, which provided: "Laws shall be passed, taxing, *by a uniform rule*, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property according to its true value in money." In passing on the question the court said, among other things:

"In legal parlance, and in the sense in which the term is used in the constitution, credits are *choses in action*—things *incorporeal*, consisting in the right of one person to demand and recover from another a sum of money or other things in possession. The value of a credit grows out of

the right to have and receive property in possession, either by a sale and transfer of the claim to another person in exchange for money or other things, or by requiring or enforcing payment from the debtor. Credits, therefore, although fictitious, nevertheless constitute property—substantial, convertible, and productive property. Money is invested in credits for profit, and credits are given in exchange on the sale of property of all kinds, real and personal. If A holds a credit or obligation against B, it is not any the less valuable as property, because A may be indebted to C.; and if A collect the amount of his claim against B, and apply the proceeds to the payment of his indebtedness to C, it amounts to the same thing, and is fully as valuable to him, as if he had sold a tract of his land, and made the same application of the proceeds of the sale. If a person hold good obligations against sundry persons, of the aggregate value of ten thousand dollars, and be indebted to sundry other persons to the amount of ten thousand dollars, the fact of such indebtedness can neither lessen the amount nor the value of his obligations against others. The indebtedness being to persons, other than those whose obligations he holds, could not be set off or otherwise lessen the value of his credits. A person's indebtedness constitutes no charge upon the credits which he holds against others, any more than it does upon any of his other property, real or personal. The constitution requires *all credits*, as well as *'all moneys,'* etc., to be taxed. And with deference to the opinion of others, I must confess myself wholly unable to comprehend the ground on which it has been claimed, that the taxable credits of a person consist simply of the excess, if any, of the aggregate amount of his choses in action over and above the gross amount of his liabilities."

The question next came before that court in the case of *Latimer v. Morgan, supra,* where the decision in the case of *Exchange Bank v. Hines* was followed and approved. Among other things, the court said:

"We are fully satisfied with the correctness of the de-

33

cision in the case of *Exchange Bank v. Hines,* and feel no
disposition to disturb it."

In the year 1856, and after the decision of the foregoing
cases, the legislature of Ohio passed an act which pro-
vided, in substance: "That a foreign corporation doing
business in that state, and required to list its credits for
taxation, might deduct from its claims and demands, aris-
ing out of the business transacted in that state, its *bona
fide* debts arising from the same source." It appears that
the taxing boards had recognized the provisions of the act
as valid for something like forty years, and when its valid-
ity was challenged in *Hubbard v. Brush, supra,* the court
sustained the statute, and made use of the language quoted
in the prevailing opinion. So it would seem clear that the
cases cited are not in point, and do not support the con-
clusions announced by the majority. The fact is that in
every case to which our attention has been directed by
counsel, where the courts have allowed a deduction of
debts from credits, the opinion was based either on an
express statute authorizing such deduction, or some con-
stitutional provision to that effect. The prevailing opin-
ion cites no case to the contrary, and after considerable
research I have been unable to find a case where the deduc-
tion has been allowed, without express statutory or con-
stitutional authority therefor.

It is said in the prevailing opinion: "The taxable
credits of an individual or business is the amount that can
be realized upon the adjustment of accounts." That the
credits to be taxed are the true credits. The statute de-
fines taxable credits as follows: "The word credit in-
cludes every demand for money, labor, or other valuable
thing, whether due or to become due." This generic term
or definition includes moneys loaned or invested, and the
fact that such loans or investments are evidenced by
promissory notes secured by mortgages renders them none
the less credits. No reason exists why debts should not be
set off against them as well as against what may be called
ordinary credits. It must be remembered, however, that

the statute contains no provision for setting off debts against credits of any kind, whether they be loans or in-vestments, or those arising in the ordinary course of trade or business, secured or unsecured. Under the rule announced by the majority, one has only to see to it that his credits do not take the form of loans or investments, set off his debts against such credits, and by that means pay no taxes at all on that form of his property, although such credits are just as valuable, and as sure to be paid in full as though they were for money loaned or invested, secured by real estate mortgages. Under this rule A, who holds a note for $1,000 taken in the ordinary course of trade against B, who is perfectly solvent, and who will pay it when due, as surely as though it were secured by a real estate mortgage, escapes taxation thereon, while his neighbor C, who holds a like note against D, which is for money loaned, and is secured in some manner, is compelled to pay taxes thereon. Again, if we are authorized to hold under the present revenue law that the taxpayer may deduct his debts from his credits, which are defined to be property, there seems to be no good reason why we should hold that he cannot deduct his debts from the value of any kind of property which he owns. And it would be but just to hold that a taxpayer, who is the owner of real property in this state, say of the value of $5,000, upon which he has executed a mortgage for $4,000 to secure the payment of a part of the purchase price, should not be permitted to set off his debt of $4,000 against the value of his land, and pay taxes on only one-fifth of the remainder, $1,000.

It is conceded in the prevailing opinion that the law in express terms makes no provision for the deduction of debts from credits; but it is stated, in substance, that the legislature in speaking of "credits" must have meant "net credits," and that the only way to ascertain the amount of net credits of the taxpayer is to deduct the amount of his debts from the gross amount of his credits. By adopting this course of reasoning we would interpolate and read the word "net" into the provisions of the act, and thus by

judicial decision amend the revenue law. This is what I protest against; this is what we should not do. It was well said by Judge Pinney in *School Directors of Pelican v. School Directors of Rock Falls*, 81 Wis. 428:

"It is well settled that the courts have no right to extend a statute upon their own notions of what is equitable, just, and wise to matters in respect to which the legislature has given no expression. To do so is the office of legislation and not of interpretation or construction. Courts cannot imagine an intent, and extend the letter of the act to it."

"Where the words of a statute are plain, explicit and unequivocal, a court is not warranted in departing from their obvious meaning, although from considerations arising outside of the language of the statute it may be convinced that the legislature intended to enact something different from what it did in fact enact." *Woodbury & Co. v. Berry*, 18 Ohio St. 456.

When the law is clear and explicit, and its provisions are susceptible of but one interpretation, its consequences, if evil, can only be avoided by a change of the law itself, to be effected by legislation, and not by judicial action. To interpolate the word "net" into the present revenue act, and thus make the law read "net credits," would violate all well established canons of construction. Courts cannot correct supposed errors, omissions or defects in legislation. To do so is to usurp the powers and duties of the lawmaking body. *Ogden v. Glidden*, 9 Wis. 40.

If it be contended that to tax credits without allowing any deduction on account of debts would work a hardship on the taxpayer, it may be stated that he is permitted to list his property, including credits, and in the first instance fix the value thereof. One listing his credits should fix the actual value of each item, not necessarily at its face value, but at such a sum as he is willing to declare under oath he can, with reasonable certainty, realize therefrom, either in money or other thing of value, and he will only be required to pay taxes on one-fifth of the value of his

credits so fixed by himself.  This, of course, means that he shall fairly value them, so that neither the assessor nor the board of equalization will have occasion to increase such valuation.

For the foregoing reasons, I am of opinion that under the revenue law of 1903, as it now stands, each taxpayer must list his credits for taxation, valued in the manner above suggested, and he cannot deduct the amount of his debts from such credits.  If the law, thus enforced, works any injustice or oppression to the taxpayers of the state, relief should be sought in further legislation.