PEOPLE'S LOAN AND HOMESTEAD ASSOCIATION OF JOLIET

*v.*

FRANK H. KEITH, Collector.

*Filed at Ottawa October 29, 1894.*

1. TAXATION—*power of legislature to exempt property from.* The legislature has no power to exempt from taxation any property other than that enumerated in section 3, article 9, of the constitution, such enumeration being an exclusion of other subjects of exemption.

2. HOMESTEAD LOAN ASSOCIATIONS—*stock and notes of, subject to taxation—section 11 of act void.* Stock and notes of homestead loan associations are taxable, and that part of section 11 of the act relating to such associations which purports to exempt such stock and notes from taxation is unconstitutional and void.

APPEAL from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

| 153 | 609 |
| 153 | 656 |
| 153 | 609 |
| 190 | 262 |
| 153 | 609 |
| 194 | ²613 |
| 194 | ²614 |
| 196 | ²343 |
| 153 | 609 |
| h201 | 45 |
| 153 | 609 |
| e206 ¹ | 18 |
| e206 ² | 18 |
| e206 ² | 19 |

Mr. J. L. O'DONNELL, Mr. A. O. MARSHALL, Mr. R. E. BARBER, and Mr. C. W. BROWN, for the appellant :

The notes, stock and mortgages assessed by the assessor in this case are not liable to taxation. Rev. Stat. chap. 32, sec. 78.

The association collectively owns nothing of stock, notes or mortgages. All the rights of members, investors or borrowers are individual rights. The property assessed in this case is personal property, and all personal property must be assessed to the holder, owner or controller thereof, when he is a resident. Rev. Stat. chap. 120, sec. 6, clause 1.

The same principle applies to bank stock, (sec. 37,) and to real estate. Sec. 58.

Mr. JULIUS STERN, and Mr. GEORGE F. MCNULTY, also for the appellant:

We contend that section 11 of the act relating to homestead loan associations is not, in effect, an exemption statute, but is merely a designation by the legislature as to which one of two things—the bonds and stock of a building association or the real estate pledged to it for advances—shall be taxed. And the real estate represented by the bonds and mortgages having been taxed, the latter can not also be taxed. _Slatton_ v. _Collins_, 43 N. J. L. 562; _Bank_ v. _Hines_, 3 Ohio St. 1; _Vail's Exrs._ v. _Runyon_, 12 Vroom, 98; _State_ v. _Runyon_, 41 N. J. L. 99.

The full amount of a building association bond and mortgage is never due at any one time. The association is never entitled to the amount thereof—merely to the agreed payment thereon. Never actually owning this amount, it is not taxable. _State_ v. _Cornell_, 2 Vroom, 374; _State_ v. _Hanson_, 7 id. 50; _State_ v. _Reimenschneider_, 10 id. 625; _State_ v. _Jones_, id. 650.

A statute should never be declared void unless the nullity and invalidity of the act are placed beyond reasonable doubt. _Willington, Petitioners_, 16 Pick. 87; _Railroad Co._ v.

*Smith,* 62 Ill. 368 ; *Hawthorne* v. *People,* 109 id. 302 ; *People* v. *Hazlewood,* 116 id. 319 ; *Wulf* v. *Aldrich,* 124 id. 591; *McGurn* v. *Board of Education,* 133 id. 122 ; *University* v. *People,* 99 U. S. 309 ; *Field* v. *People,* 2 Scam. 79 ; *People* v. *Reynolds,* 5 id. 1.

It is a rule of universal application, that a proper respect for a co-ordinate branch of the government requires that a court must be convinced, beyond a reasonable doubt, before it will declare a law unconstitutional. *Fletcher* v. *Peck,* 6 Cranch, 128 ; *Ogden* v. *Saunders,* 12 Wheat. 213.

This rule is the same whether the question involves the construction of a law or of the constitution itself. Cooley's Const. Lim. 184, and cases cited ; *Railroad Co.* v. *Smith,* 62 Ill. 268.

The question of the repugnancy of a law to the constitution is always one of much delicacy, and courts will never indulge the supposition unless the repugnancy is manifest to the understanding. *Lane* v. *Dorman,* 3 Scam. 258 ; *People* v. *Marshall,* 1 Gilm. 672 ; *Ex parte McCollum,* 1 Cow. 504; *Fletcher* v. *Peck,* 6 Cranch, 87; Cooley's Const. Lim. 632.

The remedy by injunction was the proper one. The conplainants were not bound to look to their remedy at law. *Vieley* v. *Thompson,* 44 Ill. 9.

It has been held by this court that equity will not interpose its power to prevent the collection of a tax simply for mere irregularities. If, however, the tax is not authorized by law, or, if authorized, it is imposed upon property exempt from the burden, it is otherwise. *Railroad Co.* v. *Frary,* 22 Ill. 34; *Munson* v. *Miner,* id. 595 ; *Metz* v. *Anderson,* 23 id. 463 ; *Railroad Co.* v. *Cole,* 75 id. 591; *Porter* v. *Railroad Co.* 76 id. 561; *Town of Lebanon* v. *Railroad Co.* 77 id. 539 ; *Railroad Co.* v. *Hodges,* 113 id. 325.

Messrs. HILL & HAVEN, for the appellee :

The law exempting the property of homestead loan associations is unconstitutional. Const. 1870, art. 9, sec. 1.

The constitution does more than grant power to the legislature to tax property. It makes it its *duty* to tax *all* property, so that all may pay their proportionate share of the necessary taxes. *People* v. *Worthington,* 21 Ill. 171; *People ex rel.* v. *Chicago,* 124 id. 636.

Section 11 of the Homestead Loan Association act is clearly an exemption statute. Its purpose, as stated in the act itself, is to exempt the stock and notes of corporations organized under that act from taxation. That being so, it must be strictly construed, and it devolves upon those claiming the property to be exempt to clearly show that it comes within the constitutional exemption. *People ex rel.* v. *Railway Co.* 138 Ill. 85 ; *People ex rel.* v. *Ryan,* 138 id. 267; *In re Swigert,* 123 id. 267; *People* v. *Seaman's Friend Society,* 87 id. 246 ; *People ex rel.* v. *Chicago,* 124 id. 636 ; *County of Adams* v. *Quincy,* 130 id. 578 ; 2 Dillon on Mun. Corp. secs. 776, 777.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The main question involved in this case, as presented by the record, is whether section 11 of the act relating to homestead loan associations, as amended in 1887 and 1891, is valid. That section is as follows : "Corporations organized under this act being of the nature of co-operative associations, therefore no interest, premiums, fines nor interest on such premiums that may accrue to said corporation according to the provisions of this act shall be deemed usurious, and the same may be collected as other debts of like amount may be collected by law in this State ; and all money paid to such corporations being at once loaned out and placed into taxable property, and the shares of stock and notes provided for in this act being simply evidence as to where such money has been placed, therefore such stock and notes shall not be subject to taxation."

It is claimed by counsel, who insist on the validity of the assessment made by the assessor on the notes and

mortgages of the loan and homestead association, that the section of the act is in plain conflict with sections 1, 2 and 3 of article 9 of the constitution. Those sections are as follows :

"Sec. 1. The General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property, such value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise ; but the General Assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, inn keepers, grocery keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, vendors of patents, and persons or corporations owning or using franchises and privileges, in such manner as it shall, from time to time, direct by general law uniform as to the class upon which it operates.

"Sec. 2. The specification of the objects and subjects of taxation shall not deprive the General Assembly of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this constitution.

"Sec. 3. The property of the State, counties and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation ; but such exemption shall be only by general law. In the assessment of real estate incumbered by public easement, any depreciation occasioned by such easement may be deducted in the valuation of such property."

On the other hand, it is claimed that the statute is not in conflict with the constitution ; that it does not exempt

any property from taxation; that its effect is not to cause any property to go free from taxation, but only to prevent double taxation.

The loan homestead association in question was organized under an act to enable associations of persons to become a body corporate to raise funds to be loaned only among the members of such association. (Hurd's Stat. 378.) Section 1 of the act provides as follows: "That whenever any number of persons, not less than five, may desire to become incorporated as a mutual building, loan and homestead association, for the purpose of building and improving homesteads, and loaning money to the members thereof only, they shall make," etc. Section 4 provides that corporations formed under the act shall be bodies corporate and politic, may sue and be sued, may have a common seal, etc. Section 5 provides that the corporate powers shall be exercised by a board of directors. Section 6 provides that the shares of stock shall be $100 each, and shall be deemed personal property, transferable on the books of the company. Section 8, as amended in 1891, is as follows: "The board of directors shall hold such stated meetings, not less frequently than once a month, as may be provided by the by-laws, at which the money in the treasury, if $100 or more, shall be offered for loan in open meeting, and the stockholders who shall bid the highest premium for the preference or priority of loan shall be entitled to receive a loan of $100 for each share of stock held by said stockholders. The said premium bid may be deducted from the loan in one amount, or may be paid in such proportionate amounts or installments, and at such times during the existence of the shares of stock borrowed upon, as may be designated by the by-laws of the respective associations: *Provided,* that any such association may, by its by-laws, dispense with the offering of its money for bids in open meeting, and in lieu thereof loan its money at a rate of interest and premium fixed by its by-laws, and either with or with-

out premium, deciding the preference or priority of loan
by the priority of the applications for loans of its stock-
holders :   *And provided*, that no loan shall be made by
said corporation except to its own members, nor in any
sum in excess of the amounts of stock held by such mem-
bers borrowing, but such stockholders may borrow such
fractional part of $100 as the by-laws may provide.
Good and ample real estate security, unencumbered, ex-
cept by prior loans of such associations, shall be given
by the borrower, to secure the payment of the loan : *Pro-
vided, however*, that the stock of such association may be
received as security to the amount of the withdrawal
value of such stock." Section 12 empowers the associa-
tion to purchase real estate upon which it holds a mort-
gage, and to hold it, or sell the same to any person it may
desire.   Various other powers are conferred by the act,
but it will not be necessary to refer to them here.

From the provisions of the act it is manifest that the
main object of the corporation is to raise a fund to be
loaned to its stockholders, and the only substantial dif-
ference between a loan made by a corporation of this
character and a loan made by any other corporation or
individual is, that a loan homestead association can loan
to no person who is not a member.   The person desiring
to obtain a loan must first become a stockholder.   He is
then in a position to obtain a loan, and can do so, pro-
vided he is willing to pay the highest premium which
may be offered for the money, and will give a mortgage
on unincumbered real estate to secure the loan, which
may prove acceptable to the officers of the corporation.
Upon receiving the money the borrower gives the associa-
tion his note (or contract) and mortgage to secure the
payment of the money received.   It is true that the time
of payment is not fixed at a day certain, but it is fixed at
such a time as the stock held by the borrower in the cor-
poration shall mature.   If the borrower fails to comply
with the terms of the contract upon which he received the

money, the association may foreclose the mortgage in the same manner as any other person holding a debt and mortgage. So far as the nature of the transaction is concerned, it is simply a loan of money made by the association, and the note and mortgage executed by the borrower represent a debt due from the borrower to the association for the money loaned.

Expressions may be found in *Holmes* v. *Smythe,* 100 Ill. 413, which might seem to indicate that the transaction was not a loan, but a sale of stock. What was, however, said in that case on that subject was corrected in the later case of *Freeman* v. *Ottawa Building Ass.* 114 Ill. 182. It is there, among other things, said: "It is an advancement of money in anticipation of the par value of his stock, or, if it be more agreeable to so call it, a loan to be paid by stock at its par value, with covenants to make such payments of interest and installments of dues on stock, etc., as shall eventually bring such shares to their par value." Indeed, under the language of section 8 the transaction cannot be regarded otherwise than as a loan. It is there declared that the money in the treasury shall be offered for loan; that no loan shall be made by the corporation except to its own members; that good real estate security, unencumbered, shall be given by the borrower to secure the payment of the loan. Why these expressions in the act under which the association derives all its powers, if the transaction is not a loan? And if the transaction is a loan, and the note (or contract) and mortgage are to be treated as a credit, upon what principle can it be claimed that a credit of that character should be exempt from taxation, when an ordinary loan, evidenced by the same security, is not? If a stockholder in an ordinary corporation becomes indebted to the corporation, and in order to secure the indebtedness he executes his note and mortgage payable to the corporation, and at the same time assigns his stock as collateral security, the proposition is a plain one that the credit is liable to be assessed in the

hands of the corporation for taxes, and the legislature would have no power to exempt such credit from taxation. If we are correct in regard to the case supposed, upon what principle can it be claimed that the note (or contract) and mortgage given to a homestead association for a loan can be exempted from taxation? The credits in the two cases stand upon an equality, and any rule established which will subject one credit to taxation and relieve the other will violate that rule of uniformity in taxation required by section 1 of article 9 of the constitution.

The constitution of 1848 contained a provision that "the General Assembly shall provide for levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property." This provision is substantially like the first part of section 1 of article 9 of our present constitution, and in *Hunsaker* v. *Wright*, 30 Ill. 146, in considering this clause of the constitution, it is said: "These provisions were manifestly inserted in the fundamental law for the purpose of insuring equality in the levy and collection of the taxes to support the government, whether levied for State, county or municipal purposes. The design was to impose an equal proportion of these burthens upon all persons within the limits of the district or body imposing them. Under these provisions the legislature has no power to exempt or release a person, or community of persons, from their proportionate share of these burthens." In *Trustees* v. *McConnel*, 12 Ill. 138, it was held, that under the constitution the legislature had no power to exempt one species of personal property from taxation while it collects a tax from another within the same jurisdiction. In the discussion of the question it is there said: "The constitution of the State expressly declares that the mode of levying a tax shall be by valuation, 'so that every person and corporation shall pay a tax in proportion to the value of his or her property.' Under this pro-

vision the legislature would have no power to exempt from taxation one species of personal property while it collected a tax from another within the same jurisdiction, and it is never to be presumed that the legislature intended to pass a law which should be contrary to the constitution, either in its letter or spirit." See, also, *Jack* v. *Weiennett*, 115 Ill. 105, and *Hayward* v. *People*, 145 id. 55.

Under section 1 of article 9 of the constitution we think it is plain that the burdens of taxation were intended to be cast equally upon all the property of the State, of every description. Where revenue was needed a tax is required to be levied, on a valuation, so that every person and corporation shall be required to pay a tax in proportion to the value of his, her or its property. Uniformity of taxation on all property was the cardinal principle of that section of the constitution, and had it not been for the adoption of section 3 of article 9, the legislature would have had no power, in any case, to enact a law exempting any property from taxation. But under section 3, "property of the State, counties and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation; but such exemption shall be only by general law." Here, power is conferred on the legislature, in certain specified cases, to exempt certain property from taxation. The section enumerates certain specified property which the legislature may, by general law, exempt. In the construction of statutes it is a well understood rule that the enumeration of certain specified things which may be exempted excludes all others not therein mentioned. Section 3 is therefore a limitation on the power of the legislature. The enumeration in that section of certain specified property which may be exempted is a clear limitation upon the power of the legislature to exempt any other property. Shares of stock of homestead loan associa-

tions, and notes taken by such associations, do not fall within the property which the legislature was authorized to exempt from taxation, and it seems plain that the section of the act of the legislature is in conflict with the constitution.

Moreover, section 6 of article 9, in plain and unambiguous language, prohibits the legislature from releasing property from its proportionate share of taxes, and any law which provided that any property other than that contained in section 3 of article 9 should be relieved from its share of taxation would be in conflict with the constitution. That section of the constitution is as follows: "The General Assembly shall have no power to release or discharge any county, city, township, town or district whatever, or the inhabitants thereof or the property therein, from their or its proportionate share of taxes to be levied for State purposes, nor shall commutation for such taxes be authorized in any form whatsoever." If the legislature has no power to release any county, city, township, town or district, or the inhabitants thereof or the property therein, from their or its proportionate share of taxes, as declared by this section of the constitution, upon what ground can the legislature pass an act providing that the stock and notes of a loan and homestead association located in Joliet, or in any other city or town, shall not be subject to taxation?

But it is insisted that it is not the duty of the legislature, under the constitution, to require all property to be assessed for taxation, and under the policy adopted under the constitution certain property has been exempted. In the argument three instances are given: First, that the shares of stock of corporations organized under the laws of the State, which are property, are exempt from taxation; second, while credits are property, tax-payers are permitted, in making their assessment, to deduct debts from such credits, and thus a portion of the credits are exempted; third, bills receivable, and other credits due

to a bank, banker, broker or stock jobber, are property which might be taxed, yet they are not taxed under the general revenue laws of the State. The argument of counsel is quite plausible, but we do not regard the position assumed as sound. There is a well-defined and broad distinction between the real subject matter of taxation and the mode or manner in which such taxation is to be levied. Section 1 of article 9 of the constitution provides that "the General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property." Here is a plain provision requiring the revenue to be raised by levying a tax on all property, in proportion to value. But this is followed by a further provision which allows the legislature to decide the manner in which property may be valued and the manner in which the tax may be levied. These are matters within the discretion of the legislature, but the subject matter of taxation has been determined and established by the constitution, and what may be exempted is therein specified, and the legislature has no power to go beyond the exemptions named in the constitution.

While it may be conceded that the interest of a corporation in the corporate property, and the interest of the stockholder in the corporation, are separate interests, yet in reality they both represent one thing,—the money invested in the corporation by those who organized and created it. It would therefore be manifestly unjust to impose a tax on the corporation itself, and at the same time impose a tax on the shares of stock. Such a course would, in effect, require money invested in a corporation to pay double taxation. It would be repugnant to the principle of equality and uniformity in taxation enjoined by the constitution, and had the legislature attempted to require a corporation organized and doing business under the laws of this State to pay a tax on its corporate prop-

erty and at the same time require the shares of stock issued by the corporation to be taxed, the validity of a law of that character might well be doubted. In view of these facts, the legislature, under the power conferred by the constitution to regulate the manner of ascertaining the fair valuation of property subject to taxation and the mode to be adopted in the assessment, has provided, by general law, that the whole assessment shall be made against the corporation. In doing this the legislature did not intend to exempt any property from taxation, and no property was exempted from taxation. The legislature, in order to avoid confusion and complication in the assessment, determined, as it had the right to do, that the whole tax should be collected from the corporation itself. In adopting this mode of assessment no property was exempted from taxation, but the whole burden was cast on the corporation, leaving it to adjust the matter between itself and its stockholders, as it might think best.

In considering this mode of assessment in *Ottawa Glass Co.* v. *McCaleb*, 81 Ill. 556, it is said: "Our General Assembly * * * have provided that where the tangible property or capital stock of a corporation is assessed for taxation, the shares shall not be assessed against the holders thereof. * * * Thus it is seen that the shareholders, under this provision, escape taxation on their individual shares when the company lists their tangible property as capital stock. We perceive no excess in the exercise of power by the General Assembly in making this provision. The company acts through its directors, and in exercising the franchise and managing the business for the shareholders they act as *quasi* trustees, and their relation to each other is so close in the management of the corporation, their business and property thus held and managed, that no reason is perceived why the General Assembly, if they believe that such a mode is better calculated to prevent the shares from escaping their just proportion of

taxation, may not require the taxes to be paid by the corporation, and collected by them of the shareholder, by deducting the amount from his dividends, or otherwise."

In the case cited there is no intimation that the legislature, in adopting the mode of taxation it did in regard to corporations, either directly or indirectly exempted any property from taxation, and we see no reason now to change the conclusion then reached.

As respects credits, and the deduction from such credits of *bona fide* debts of the person or corporation assessed, authorized by the statute, we do not understand that the operation of the statute exempts property from taxation. Section 27 of the revenue statute, which authorizes the deduction of debts from credits, is as follows: "In making up the amount of credits which any person is required to list for himself, or for any other person, company or corporation, he shall be entitled to deduct from the gross amount of credits the amount of all *bona fide* debts owing by such person, company or corporation, to any other person, company or corporation, for a consideration received." It may be conceded that credits are property, but if a tax-payer holds a promissory note of $1000 against A, and at the same time is indebted to B in the sum of $1000, he has no credits. If A borrows of B $1000 and loans the same money to C, can it be said that A has property of the value of $1000?—or, in other words, is he worth $1000? The method adopted by the legislature in requiring credits to be assessed was intended to reach such credits as the tax-payer possessed, and the only just mode that could be adopted was one allowing all *bona fide* debts to be deducted, leaving the balance in his hands liable to be taxed, and in our judgment the adoption of this mode of assessment of credits exempts no property from taxation.

As to deductions allowed in the case of bankers, brokers and stock jobbers, they stand upon the same footing. The statute authorizes the amount of deposits and

the amount of accounts payable to be deducted from the bills receivable, and other credits and interest due the bank. This is a method under which may be determined the just and true amount of credits held and owned by the bank which should be assessed as property. The legislature, in providing this mode, did not intend to exempt any property of any description, but only adopted a plan under which the true and real amount of property held and owned could be ascertained. The deposits held by a bank, and its accounts due, represent the indebtedness of a bank, and in order to determine the real credits owned by the bank these items should be deducted from the bills receivable, and a statute authorizing this to be done does not, in our opinion, exempt any property from taxation. It is only a method adopted by which the true credits held and owned may be ascertained and determined.

It is also claimed that the power of the legislature over the subject of taxation of corporations and their property does not fall within the limitation prescribed by the first clause of section 1 of article 9 of the constitution, but under the last clause of that section,—that the legislature has authority to tax or not to tax the property of corporations, as it may, in its discretion, deem proper. In arriving at a construction of section 1 the two clauses of the section must be considered together, and the entire section must be considered in connection with sections 2 and 3 of the same article. When this is done we think it is plain that the framers of the constitution intended that all property should be taxed except such as the legislature was authorized to exempt by section 3; that it was not intended by the second clause to permit any property belonging to corporations to be exempted from taxation by the legislature, but the legislature was only authorized to adopt a different method for the assessment of such property, if it was thought proper to do so. By adopting the construction contended for,

the first clause of section 1, which requires equality and uniformity, would not only be abrogated, but the legislature would have unlimited power to exempt large amounts of the property of corporations, while the same property in the hands of individuals would be liable to taxation.

Much reliance, in the argument, is placed in *Sterling Gas Co.* v. *Higby*, 134 Ill. 557. But in that case it was not claimed that the property assessed was exempt from taxation. Whether the legislature had the power to exempt the property of a corporation under the second clause of section 1 did not arise in that case, nor was that question decided. It was held in that case that the power to impose a tax upon the capital stock and franchise of a corporation formed for pecuniary profit was not confined to the first clause of section 1 of article 9 of the constitution, and the second clause was not confined to occupations, but also applied to property rights. But the question here involved was not considered or decided, and the same is true of the other cases cited.

It is also claimed in the argument, if the corporation is taxed on the obligations it holds against borrowers, the borrowing stockholder will be taxed twice on the same property,—once on the real estate mortgaged, and again on the credit arising from the loan,—and the result is double taxation. We do not concur in this view. Where a person owning a farm procures a loan and mortgages the land, the land is subject to taxation as the property of the owner, and the note and mortgage are subject to taxation as a credit in the hands of the person loaning the money, and where a loan is procured from a homestead loan association the borrower and the association occupy a similar position; and if the note and mortgage, and the land upon which the mortgage is given, are both taxable in the one case, we see no good reason why they should not be in the other. The note (or contract) and mortgage held by a loan association are in no sense a credit of the borrower, but are a credit belonging to

the corporation. If the credit is taxed, the tax falls on the corporation and not upon the borrower. It is true that a portion of the tax may ultimately fall on the borrower, as a stockholder of the corporation; but that amount, whatever it may be, falls upon him as a stockholder having an investment for profit in a corporation.

In conclusion, we think that the association was liable to be assessed by the assessor, and the decree of the circuit court will be affirmed.                *Decree affirmed.*