THE STATE EX REL. MISSOURI STATE LIFE INSURANCE COMPANY v. FREDERICK GEHNER, as Assessor, and as President and A. R. SCHOLLMEYER ET AL. as Members of Board of Equalization of City of St. Louis.—8 S. W. (2d) 1068.

Court en Banc, July 3, 1928.

692

*Jourdan & English* and *Allen May* for relator.

*Julius T. Muench* and *Charles J. Dolan* for respondents.

RAGLAND, J.—Relator is a life insurance company organized under the laws of this State, having its principal office and place of business in the city of St. Louis. On June 1, 1925, it made a return for taxation of its property and assets in conformity with the pro-

visions of Section 6386, Revised Statutes 1919. Such return disclosed, among other things, that relator's capital stock was $2,000,000; that its undivided profits, premiums or earnings, were $1,413,151.18; that its gross assets amounted to $56,789,844.53, which included real estate valued at $4,974,030.48; that the legally required reserve necessary to reinsure its outstanding risks was $52,243,822.91; and that the amount of unpaid policy claims pending against it was $403,-074.42. It thus appeared from the return that there was no personal property of relator's subject to taxation under the provisions of said Section 6386. For after deducting the value of the real estate from the gross assets the remainder was less than the required legal reserve and the unpaid policy claims. Said Section 6386 and Section 6397, Revised Statutes 1919, which supplements it, are as follows:

"Sec. 6386. The property of all insurance companies organized under the laws of this State shall be subject to taxation for state, county, municipal and school purposes as provided in the general revenue laws of this State in regard to taxation and assessment of insurance companies. Every such company or association shall make returns, subject to the provisions of said laws: First, of all the real estate held or controlled by it; second, of the net value of all its other assets or values in excess of the legally required reserve necessary to reinsure its outstanding risks and of any unpaid policy claims, which net values shall be assessed and taxed as the property of individuals. . . .

"Sec. 6397. All life insurance companies organized under the laws of this State shall make return for taxation of their property and assets as provided for in Section 6386 of the Revised Statutes of Missouri, 1919, and such property shall be assessed for taxation upon the same basis of valuation as may be adopted by the assessor or by the board of equalization for the taxation of the taxable property of banks or joint stock institutions doing a banking business."

Notwithstanding relator's return, which was not found to be in any respect untrue, and notwithstanding the statutory provisions just set out, the Board of Equalization of the City of St. Louis arbitrarily assessed relator's personal property at $1,000,000. Relator seeks in this proceeding to have such assessment and the tax bill based thereon quashed.

Respondents contend: First, that said Sections 6386 and 6397, when properly construed, provide for a tax on the "net assets" of insurance companies *in addition* to a tax imposed under the general revenue laws of the State; and, second, that, if those sections are construed to mean that only the net assets are subjected to taxation, they not only violate the requirements of the Constitution that taxation shall be uniform and in proportion to value (Sections 3 and 4,

Article X), but fall as well under its ban with respect to laws exempting property from taxation. [Sec..7, Art. X.] The construction and constitutionality of the sections just referred to are therefore the matters presented for determination.

I. Some reference to both earlier and contemporaneous enactments dealing with the taxation of insurance companies and banks will be of aid in interpreting said Sections 6386 and 6397. In 1869 an act was passed which provided that life insurance companies organized under the laws of this State should pay certain designated fees which should go to the support of the Insurance Department, and that such fees should be in lieu of all taxation whatsoever. This act was held violative of certain provisions of the Constitution of 1865: that property should be taxed in proportion to its value and that no property should be exempt from taxation. [Life Assn. of America v. Board of Assessors, 49 Mo. 512.] In 1872 a complete and comprehensive revenue measure was enacted. [Laws 1872, p. 80.] Section 35 of that act provided in effect that the property of manufacturing and business companies should be assessed and taxed as the property of individuals, but with respect to banks and insurance companies that the shares of stock should be assessed at actual cash value. It further provided that insuance companies doing business on the mutual plan without capital stock should make returns of the net value of their assets which should be "assessed and taxed in like manner."

Section 36 of the act provided that the tax assessed against such shares of stock should be paid by the corporation and be recovered by it from the shareholders. This section has continued in force without change even in phraseology. It is now Section 12777, Revised Statutes 1919.

Said Section 35, aside from minor changes made from time to time, continued in force down to 1911. It appears in the Revised Statutes of 1909 as follows: 

"Sec. 11357. The property of manufacturing companies and other corporations named in article VII, chapter 33, and all other corporations, the taxation of which is not otherwise provided for by law, shall be assessed and taxed as such companies or corporations in their corporate names. Persons owning shares of stock in banks, or any joint-stock institution or association doing a banking business, or any insurance company, whether of fire, marine, life, health, accident or other insurance, incorporated under or by any law of the United States or of this State, shall not be required to deliver to the assessor a list thereof; but the president or other chief officer of such corporation, institution or association shall, under oath, deliver to the

assessor a list of all shares of stock held therein, and the face value thereof, the value of all real estate, if any, represented by such shares of stock, together with all reserved funds, undivided profits, premiums or earnings, and all other values belonging to such corporation, company, institution or association; and such shares, reserved funds, undivided profits, premiums or earnings, and all other values so listed to the assessor, shall be valued and assessed as other property at their true value in money, less the value of real estate, if any, represented by such shares of stock. . . .

In 1911 the section was amended to read as follows:

"Section 11357. The property of manufacturing companies and other corporations named in article 7, chapter 33, insurance companies organized under the laws of this State and all other corporations, the taxation of which is not otherwise provided for by law, shall be assessed and taxed as such companies or corporations in their corporate names. Persons owning shares of stock in banks, or in joint-stock institutions or associations doing a banking business shall not be required to deliver to the assessor a list thereof, but the president or other chief officer of such corporation, institution or association shall, under oath, deliver to the assessor a list of all shares of stock held therein, and the face value thereof, the value of all real estate, if any, represented by such shares of stock, together with all reserved funds, undivided profits, premiums or earnings and all other values belonging to such corporation, company, institution or association; and such shares, reserved funds, undivided profits, premiums or earnings and all other values so listed to the assessor shall be valued and assessed as other property at their true value in money, less the value of real estate, if any, represented by such shares of stock. . . ." [Laws 1911, p. 417.]

The section as so amended now appears as Section 12775, Revised Statutes 1919. The amendatory act contained an emergency clause which recited that under the provisions of the laws as they then existed a question had arisen as to how insurance companies should be assessed, thereby creating an emergency within the meaning of the Constitution. In this connection it should be noted that said Section 6386 was enacted in 1879 and has been continued down to the present revision without change. Section 6397 was passed in 1913. [Laws 1913, p. 384.] The act embodying it also had an emergency clause which recited: "Whereas by the present provisions of the laws of this State there is an uncertainty as to the proper procedure for the making of returns for taxation of the property of life insurance companies, an emergency is created, etc."

In the taxation of the property of corporations in this State different methods have been employed. Such taxation has been effected by taxing the property, by taxing the capital stock and by taxing

the shares of stock. When the Legislature has selected one mode, with respect to a designated class of corporations there is no presumption, in the absence of an express provision, that it intended that taxes should be levied in accordance with either of the other two. This because such additional levies would result in double taxation. [State v. Railway Co., 77 Mo. 202; State v. Lesser, 237 Mo. 310, 141 S. W. 888.] Since 1872 the property, both real and personal, of manufacturing and business corporations has been assessed and taxed in all respects as that of individuals. But from 1872 down to 1911 a different method was employed in taxing both banks and insurance companies. While the real estate of such corporations was assessed and taxed as their property, their personal property was taxed through the assessment and taxation of the shares of stock in the hands of the stockholders. "The reason for making exceptions of banks (and) insurance companies . . . is the difficulty in reaching the tangible property in those concerns; the stock is treated as representing the property and taxed in lieu of taxing the property." [State v. Lesser, supra, l. c. 326.] The requirement of Section 11357, Revised Statutes 1909, that the chief officer of such a corporation include in his return "the face value thereof (the shares), the value of the real estate, if any, represented by such shares of stock, together with all reserved funds, undivided profits, premiums or earnings, and all other values belonging to the corporation," was merely for the purpose of furnishing the data which would enable the assessor to determine the cash value of the shares.

Now the method of taxing the property of a corporation through the taxation of the shares of the stock in the hands of the several owners of the shares operates to tax merely the net assets of the corporation. The shareholders own such of the assets as remain after all liabilities have been discharged. The value of a share of stock is therefore the equivalent in value of the allocated part of the net assets of the corporation which it represents. The Legislature in the enactment of the general revenue law in 1872 clearly understood that it was subjecting merely the net assets of banks and insurance companies to taxation. This is so because Section 35 of the act expressly provides: "Insurance companies or any other corporations doing business on the mutual plan, without capital stock, shall make like returns of the net value of all assets or values belonging thereto, which *net value* shall be assessed and taxed in like manner."

The Legislature's purpose in enacting said Section 6386 is not difficult to discover. The section first provides that the property of domestic insurance companies shall be subject to taxation as provided in the general revenue laws of this State in regard to *taxation and assessment of insurance companies*. That specific "general revenue law" was, at the time of the enactment of the section, embodied in

Sections 35 and 36 of the Act of 1872, becoming Sections 6692 and 6693, of the Revision of 1879. Section 6386, after thus confirming the plan of taxing the net assets only of insurance companies as provided by the general revenue laws, then in force, expressly directed that in determining net assets deductions should be made for the required legal reserve and the unpaid policy claims. It was a legislative definition of net assets, namely, the assets remaining after deducting from the gross assets all liabilities, including legal reserve and unpaid policy claims.

The amendment of 1911 provided that insurance companies should be assessed and taxed in their corporate names, and omitted the provisions of Section 11357 for the taxing of the shares of stock. As Section 6386 was left standing and in full force, it is obvious that there was no intention of subjecting personal property of such corporations to taxation in any other way than in the form of net assets. The result of the amendment was that stock companies were required to be thereafter assessed and taxed just as mutual companies had been since 1872. In other words, the amendment resulted in bringing about a uniform method of procedure for assessing and taxing all insurance companies, both stock and mutual. It effected no change as to the personal property of those companies subjected to taxation. Such property continued to be net assets only. This view is confirmed by the subsequent action of the Legislature in passing said Section 6397.

In the foregoing we have endeavored to show that there is no conflict between said Sections 6386 and 6397 and the general revenue laws of the State. But if there is any repugnancy, the former must control. The special prevails over the general statute. [State ex rel. v. Gehner, 280 S. W. 416.]

Aside from the historical interpretation of said Section 6386 which we have essayed, there is another potent reason why it in connection with the general revenue laws cannot be construed as subjecting to taxation both the net assets of insurance companies and their personal property as a whole. Under such a construction double taxation would necessarily and inevitably result. Whether such double taxation would contravene the constitutional provisions requiring uniformity we need not decide. It is sufficient to say that, as an intent to tax both the net assets and the personal property in its totality has not been clearly declared, such an intent cannot be imputed to the Legislature. [Valle v. Ziegler, 84 Mo. 214; State v. Lesser, supra; State ex rel. v. Brinkop, 238 Mo. 298, 143 S. W. 444.]

For all of the reasons indicated in the foregoing we conclude that the legislative intent, as manifested by the several enactments to which reference has been made, is, and since 1872 has been, to subject to taxation the personal property of insurance companies in the form of net assets, and not otherwise.

II. If the statutes governing the taxation of the personal property of insurance companies violate the provisions of the Constitution which the respondents point out, then the statutes regulating the assessment and taxation of the personal property of banks are on like grounds invalid. This, however, does not dispose of respondent's contention; both may be unconstitutional.

The personal property of insurance companies organized under the laws of this State, to the extent of the reserves which they are required by law to maintain, consists exclusively of cash and credits. And cash when deposited in bank becomes merely a credit. Assets in excess of reserves may, it seems, be invested in the stocks of other corporations. [Laws 1927, p. 285; Laws 1925, p. 270; Secs. 6126, 6159, 6217, 6259 and 6331, R. S. 1919.] The personal property of relator in this case, as shown by its return, was made up of credits only. Now it is generally conceded that a statute which in ascertaining the amount of credits of a taxpayer to be taxed to him allows a deduction of the debts owed by him does not violate constitutional provisions that taxation shall be uniform and in proportion to value and that no property shall be exempt from taxation. [Florer v. Sheridan, 137 Ind. 28; Hubbard v. Brush, 61 Ohio St. 252; Lancaster County v. McDonald, 73 Neb. 453; Stumpf v. Storz, 156 Mich. 228; State v. Parmenter, 50 Wash. 164; Macklot v. City of Davenport, 17 Iowa, 379; Loan & Homestead Assn. v. Keith, 153 Ill. 609; State v. Railway Co., 95 Minn. 43; 26 R. C. L. 254, sec. 225; 1 Cooley on Taxation (4 Ed.) secs. 159 and 160; 2 Cooley, sec. 823.] The underlying principle of the cases is this: "While credits are property, their value must be ascertained, and the deduction of their owner's indebtedness from the credits is the best way of ascertaining their value." [Gray on Limitations of Taxing Power, sec. 1396.] For example, the Supreme Court of Indiana, in Florer v. Sheridan, supra, said:

"The Legislature had a right, under its [the Constitution's] provisions, to equalize these burdens by a regulation which would tend to secure a just valuation. The plan adopted was to ascertain the just value of the credits after deducting the indebtedness. Credits are, by the Constitution, property, and as such are to be taxed. Their just value is to be ascertained by subtracting the bona-fide indebtedness from the gross amount of the notes, accounts and other choses in action, and the balance is to be returned as belonging to the individual. Surely, the difference thus found is the precise amount and just value of the credits of the party in the legal and proper sense of the term."

And the Supreme Court of Illinois, in Loan & Homestead Assn. v. Keith, supra:

"It may be conceded that credits are property, but if a taxpayer holds a promissory note of $1000 against A, and at the same time is indebted to B in the sum of $1000, he has no credits. If A borrows of B $1000 and loans the same money to C, can it be said that A has property of the value of $1000?—or, in other words, is he worth $1000? The method adopted by the Legislature in requiring credits to be assessed was intended to reach such credits as the taxpayer possessed, and the only just mode that could be adopted was one allowing all bona-fide debts to be deducted, leaving the balance in his hands liable to be taxed, and in our judgment the adoption of this mode of assessment of credits exempts no property from taxation."

If, as the authorities cited hold, the just value of credits is to be ascertained by deducting from their gross amount the bona-fide indebtedness of the owner, then the statute which authorizes that method of assessing credits for taxation cannot be violative of any of the provisions of the Constitution. And such is the conclusion we have reached.

Whether the deduction of "the legally required reserve necessary to reinsure its outstanding risks" from the credits of an insurance company in valuing them for taxation falls within the principle announced in the cases to which reference has been made, remains to be considered. There is an essential distinction between the "legal reserve" of a life insurance company and the "unearned premiums" or "premium reserve" of an insurance company other than life.

"The reserve fund of a life insurance company is properly regarded as an indebtedness, because the death of every person it has insured is inevitable, and its disbursement in payment of policies is an absolute certainty. The only uncertainty in the matter is the order in which the policies kept in force will have to be paid. . . .

"The reinsurance reserve in fire insurance is a fund composed of the portions of gross premiums of policies in force, which have not been earned by the insuring company, and its chief purpose is to enable the company to rid itself of liability for future possible claims when continued excessive losses threaten to use up its surplus and impair its capital to such an extent as may endanger the security of the policyholders, either by paying back the unearned premiums and canceling the policies, or by paying them over to a new insurer to assume and carry out the policy risks." [Note, 13 A. L. R. 187, citing Trenton v. Insurance Company, 77 N. J. L. 757.]

As the legal reserve of a life insurance company may be properly regarded as representing "a present indebtedness of the insurer upon policies in force at any given time" it is clear that it may be deducted from the company's credits in valuing them for taxation. [Alabama Gold Life Insurance Co. v. Lott, 54 Ala. 499.]

In considering the nature of the legal reserve of an insurance company other than life, it must be kept in mind that the construction of a statute permitting the deduction of *debts* from credits is not involved in this case. It may be conceded that the requirement for the maintenance of such a reserve is not a debt in a technical sense. Yet it is a liability (State ex rel. v. Schramm, 271 Mo. 223, 196 S. W. 21); such liability considered with reference to a particular policy may be regarded as contingent, but with reference to the outstanding insurance of the company as a whole it is definite and fixed, made so by statute. [Sec. 6222, R. S. 1919.] This statutory liability is determined annually as to each company by the State Superintendent of Insurance and made the test of solvency. [Secs. 6222, 6225, R. S. 1919.] The assets of such company as a whole are impressed with this liability, and only assets in excess of it can be distributed in the form of dividends, earnings or profits. [Sec. 6333, R. S. 1919.] We are therefore of the opinion that it cannot reasonably be said that the value of the credits of such an insurance company after the deduction of the reserve is not their just and true value.

For the reasons herein indicated we hold that Section 6386, in permitting insurance companies to deduct their reserve from their credits for the purpose of valuing the latter for taxation, is not violative of any provision of the Constitution.

The record of the Board of Equalization of the City of St. Louis under review and the tax bill based on the assessment evidenced thereby are quashed. All concur.