NATIONAL PROTECTIVE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101709. Promulgated July 10, 1941.

*James P. Aylward, Esq.,* and *Terence M. O'Brien, Esq.,* for the petitioner.

*R. P. Hertzog, Esq.,* for the respondent.

OPINION.

MELLOTT: Respondent has determined that petitioner is taxable as an insurance company other than life or mutual under section 204 of the Revenue Acts of 1934 and 1936. Petitioner contends that it is a life insurance company within the meaning of section 201 (a) of these acts and entitled to be taxed as such. The section relied upon by petitioner, which is the same under each act, is shown in the margin.[1]

Petitioner contends that the only reserve it maintained during the taxable years was for the fulfillment of its life contracts; that it had no reserve for its health and accident coverage and none was required by the laws of the state of its incorporation; and that any designation of its unearned premium account as a "reserve" by the Missouri Superintendent of Insurance is immaterial. Respondent argues that petitioner's unearned premium account is a reserve within the meaning of the phrase "total reserve", used in section 201 (a), *supra.* Petitioner concedes that if this is true then it is taxable as an insurance company other than life or mutual.

Petitioner places its chief reliance upon *Maryland Casualty Co.* v. *United States*, 251 U. S. 342, quoting from the Court's opinion the following:

The term "reserve" or "reserves" has a special meaning in the law of insurance. While its scope varies under different laws, in general it means a sum of money, variously computed or estimated, which, with accretions from interest, is set aside, "reserved", as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued, but contingent and indefinite as to amount or time of payment.

\* \* \* \* \* \* \*

Reserves, as we have seen, are funds set apart as a liability in the accounts of a company to provide for the payment or reinsurance of specific, contingent liabilities. They are held not only as security for the payment of claims, but also as funds from which payments are made.

Petitioner contends that in the light of the above definition three essentials of a reserve are lacking in its unearned premium account—first, it is not calculated upon any table of experience or contin-

---

[1] SEC. 201. TAX ON LIFE INSURANCE COMPANIES.

(a) DEFINITION.—When used in this title the term "life insurance company" means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds.

gencies; second, it is not calculated with reference to accretions from interest; and, third, it can not be used to pay the claim when the contingency forming the basis of the insurance occurs.

The quoted portion of the opinion might indicate that the Court would have held, if such an issue had been before it, that a reserve for unearned premiums was not an insurance reserve. That no such holding would have been made, however, is indicated by the following language: "Unearned premium reserve and special reserve for unpaid liability losses are familiar types of insurance reserves * * *."

Under date of October 4, 1935, petitioner entered into an agreement with the Superintendent of Insurance of the State of Missouri wherein it agreed to maintain "unearned premium reserves" in the amounts specified in the agreement. The reserve here involved was set aside pursuant to the terms of this agreement. The evidence does not convince us that it differs in any material respect from the unearned premium reserve usually maintained by insurance companies in connection with health, accident, fire, and other kinds of insurance, except life insurance. Its "chief purpose is to enable the company to rid itself of liability for future possible claims when continued excessive losses threaten to use up its surplus and impair its capital to such an extent as may endanger the security of the policyholders, either by paying back the unearned premiums and canceling the policies, or by paying them over to a new insurer to assume and carry out the policy risks." *State ex rel Missouri Life Insurance Co.* v. *Gehner*, 320 Mo. 691; 8 S. W. (2d) 1068; *Trenton* v. *Insurance Co.*, 77 N. J. Law 757; 73 Atl. 606. State laws usually require that the unearned premium reserve fund consist of the unearned portion of the gross premiums on unexpired and unterminated risks and policies. McKinney's Consolidated Laws of New York, Annotated, Book 27, sec. 73, p. 104; Page's Ohio General Code, Annotated, vol. 6, sec. 9362; Michigan Statutes, Annotated, vol. 17, sec. 24.218; Annotated Laws of Massachusetts, ch. 175, sec. 10. Because of the difficulties incident to examining a large number of policies to determine the unearned portion of the premiums, however, some state statutes provide that the reserve be calculated by taking a certain portion of the gross premiums collected. Purdon's Pennsylvania Statutes, Annotated, title 40, sec. 91; Heubner-Property Insurance. That, apparently, was what the Superintendent of Insurance of the State of Missouri was doing when he prevailed upon petitioner to set aside the portion of the gross premiums referred to in the stipulation shown in our findings.

In considering the definition of a reserve in *Maryland Casualty Co.* v. *United States, supra*, it should be kept in mind that the Court

recognized that the scope of the word varied and it prefaced its definition with the words "in general it means." The unearned premium reserve of an insurance company other than life or mutual differs from a life insurance reserve in that it ordinarily does not involve a calculation based upon a table of contingency or experience, or take into consideration earnings or interest on the fund, and is not usually used to pay contingent claims when the contingency insured against occurs. It is, however, a basic insurance reserve, a fund set apart to meet certain contingencies, one being the possibility that certain policyholders might cancel their policies and demand the unearned portion of premiums, and the other being that excessive losses and consequent impairment of capital might require the company to cancel the policies and return the unearned premiums to the policyholders, or, in the alternative, pay them over to a new insurer to assume and carry out the policy risks.

In *Aetna Ins. Co.* v. *Hyde*, 34 Fed. (2d) 185, 197, Circuit Judge Stone, speaking for a statutory court of three judges sitting in the Western District of Missouri, described the unearned premium reserve of a fire insurance company in the following language:

As to the reserve: This has to do with losses under the policies. Although such losses are the exception, they occur. They may happen at any time upon any of such contracts and should, under the contract, be promptly paid. The insurer must be always in a financial position to make such payment. Good business intelligence and integrity would require the maintenance of a liquid fund proportioned to the existing risks. When an insurance business starts, this fund is provided by the capital stock. State statutes usually require a minimum capitalization. As the business grows and the total of assumed risks increases, the fund must be correspondingly increased. Well managed companies carry such "surplus" as seems advisable for such purposes. Naturally, the management of companies would differ as to how much of its income (including premiums) should be thus reserved and how much paid out in dividends. To assure a sufficient reservation for the protection of the policy-holder, the States have enacted laws. The basic thought in most of such laws is to secure this protection through reinsurance in some other and solvent company. This is worked out by requiring a fund sufficient for that purpose. As premium rates are the same in all companies—by law or by business necessity—the premiums for the unexpired terms of the policies are sufficient for the above purpose. Hence, the usual requirement is that the fund at all times equal the premiums on the unexpired terms of the policies in force. To describe this amount, it is called the "unearned" premium. The balance of the premium is called "earned" premium. This term "unearned" premium does not mean that the entire premiums have not been *earned* in the sense that they are absolutely the property of the insurer. It does not mean that the insurer must take nine out of every particular $10 paid as premium on each policy and set that specific $9 aside. It does not mean that any trust or agency or other legal relation exists as to any part of any specific premium. What it does mean is that the insurer shall have and keep a fund of that amount constantly available for that purpose and that purpose alone. In short, it cannot distribute that much of its assets in dividends nor

use it for other corporate purposes. In order to be sure that this fund is secure, different requirements are made. Some states require this segregation to be by physical deposit of approved securities in designated depositories. Ordinarily, it is merely a matter of bookkeeping by the insurer, enforced by examination of its books and securities by representatives of the state.

On brief petitioner places some stress on the fact that its unearned premium reserve was not required by the laws of Missouri. This, however, is immaterial. Section 201 (a), *supra*, does not provide that a reserve must be required by law. It provides that a company is a life insurance company if more than 50 percent of its total reserve funds are held for the fulfillment of life insurance contracts. The fact that petitioner's unearned premium reserve is not required by law does not alter its character as a reserve. It must be assumed that Congress was aware of the distinction between reserves maintained by insurance companies for life insurance coverage and unearned premium reserves maintained for coverage other than life, such as health, accident, and fire insurance. Both types of reserves in our opinion must be taken into consideration in computing the "total reserves" of an insurance company for classification purposes.

Petitioner's argument to the effect that its unearned premium account is the equivalent of cash and belongs to the insured has not been overlooked. This contention seems to be based upon the fact that the health and accident policies issued by it are cancelable by either party, and, in the event of cancellation, a definite obligation, involving no contingencies, arises. Petitioner relies upon *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686. In the cited case the Court was concerned with the meaning that Congress intended by the language "4 percentum of the mean of the reserve funds required by law" in section 245 (a) of the Revenue Acts of 1921 and 1924. The question was whether the amounts set aside by the company to retire matured, unsurrendered, and unpaid coupons attached to policies of life insurance issued by it, which provided that the matured amount thereof could be applied to the payment of premiums, be withdrawn in cash, or be left with the company at compound interest, should be considered as part of its reserves. The Court held that they should not be, pointing out that they did not directly pertain to insurance, but represented a matured liability, dependent upon no contingency. There might be some substance to petitioner's argument if the amounts reserved belonged absolutely to the policyholders; but they do not. "He [the policyholder] has no legal or equitable interest therein. All that he has is the contract obligations of the company." *Aetna Ins. Co.* v. *Hyde*, *supra*. The reserve is set up for the purpose of assuring the fulfillment of such obligations. It belongs to the company and is invested by it "precisely as   *   *   *   any other monies it may have."

We are of the opinion and hold that petitioner's unearned premium reserve is a reserve within the meaning of section 201 (a), *supra*. The gross premiums on its health and accident contracts set aside in this reserve comprised more than 50 percent of its total reserve funds. It follows, therefore, that petitioner is taxable as an insurance company other than life. The Commissioner committed no error in determining the deficiencies in tax.

Reviewed by the Board.

*Decision will be entered for the respondent.*