Dear Representative Villa;
This letter is in response to your questions asking as follows:
 "A. Does the title to Senate Bill 703 (commonly known as the Harris-Stowe Bill), as it relates to Section 6 of that Bill, comply with the requirement of Article III, Section 23 of the Missouri Constitution that: `No bill shall contain more than one subject matter which shall be clearly expressed in its title. . . .'
 "B. Does Subsection 1 of Section 6 of Senate Bill 703 amend the provisions of Sections 169.410 to 169.540, R.S.Mo. to the extent such subsection is in conflict therewith? If not, do the provisions of Senate Bill 703 or Sections 169.410 to 169.540, R.S.Mo., control when there is conflict between them?
 "C. Where Subsection 1 of Section 6 of Senate Bill 703 refers to `persons employed by Harris-Stowe College prior to September 1, 1978', does such reference include only those persons employed prior to September 1, 1978 by the Board of Regents of Harris-Stowe College duly appointed, qualified and acting pursuant to Section 2 of the Bill, or does it also include those persons employed by the Board of Education of the City of St. Louis who are assigned to Harris-Stowe College during the transition period provided for in Section 3 of the Bill, but not technically employed by the Board of Regents until after September 1, 1978."
You also state:
 "Harris-Stowe College is and for many years has been owned, managed and controlled by the Board of Education of the City of St. Louis as a city teacher training school pursuant to Section 178.410, R.S.Mo. The college receives state aid under § 163.171.
 "Senate Bill 703 (commonly known as the Harris-Stowe Bill) which was recently enacted by the Missouri legislature and signed by Governor Teasdale, provides for the transfer of ownership, management and control of the college to a Board of Regents to be appointed by the Governor prior to October 17, 1978. The Board of Regents will thereafter assume ownership, management and control of the college. Its operations will be funded by the State of Missouri. A complete copy of the Bill is attached to this request.
 "Section 6 of the Harris-Stowe Bill directs that any persons, employed by the college prior to September 1, 1978 who are members of the Public School Retirement System of the City of St. Louis will thereafter remain members of that system, and any required employer contributions for such persons will be made by the State of Missouri. Persons employed after September 1, 1978 will become members of the appropriate state retirement system.
 "Under Sections 169.410 to 169.540, R.S.Mo., the Board of Trustees of the Public School Retirement System of the City of St. Louis is responsible for the administration of that system.
 "The Board of Trustees has been advised by the Board of Education of the City of St. Louis that persons currently employed at the college will be allowed either to remain at the college or to transfer to another public school under the management and control of the Board of Education of the City of St. Louis. In making this decision, the right to continued membership in the Public School Retirement System of the City of St. Louis is expected to be a significant consideration, particularly in the case of non-professional employees who would not qualify for membership in the state public school retirement system.
 "The Board of Trustees of the Public School Retirement System of the City of St. Louis is unable to give reasonable assurance to its members who work at Harris-Stowe College regarding the right to remain members of the system because of (a) possible constitutional deficiencies in the title of S.B. 703, (b) conflicts between Subsection 1 of Section 6 of the Bill and Sections 169.410 to 169.540, R.S.Mo., and (c) an ambiguity in the Bill concerning the employment relationship with the College prior to September 1, 1978 necessary to allow continued membership in the Public School Retirement System of the City of St. Louis.
 "Examples of the conflicts between Subsection 1 of Section 6 of the Harris-Stowe Bill and Sections 169.410 and 169.540, R.S.Mo. include the definitions of employee, public school, school district and teacher under Section 169.410, R.S.Mo. Furthermore, Section 169.540, R.S.Mo. is totally repugnant to the Harris-Stowe Bill in that it provides that the State of Missouri shall contribute no funds to the retirement system except as part of a general apportionment of school moneys throughout the state.
 "The Board of Trustees is informed that during the period of transition as provided in Section 3 of the Bill, all of the persons who work at Harris-Stowe College may continue to be employed by the Board of Education of the City of St. Louis and assigned to Harris-Stowe College. Substantially all personnel and other costs incurred in management and operation of the College will be reimbursed by the state. Hence, persons who work at the College may not be employed by the Board of Regents until after September 1, 1978. Subsection 1 of Section 6 of the Bill does not clearly state that such employees shall remain members of the Public School Retirement System of the City of St. Louis."
In view of the time element involved we will eliminate unnecessary discussion and attempt to answer your questions as briefly as possible.
Your first question asks whether the title to Senate Bill No. 703, Second Regular Session, 79th General Assembly, effective August 13, 1978, complies with the requirements of Section 23 of Article III of the Missouri Constitution and contains not more than one subject matter which is clearly expressed in its title. It should be clear that this office does not have the authority to declare a legislative enactment unconstitutional. GershmanInvestment Corp. v. Danforth, 517 S.W.2d 33 (Mo.Banc 1974). However, in any event, it is our view that the Missouri courts would not declare the title of Senate Bill No. 703 to be in violation of Section 23 of Article III. We are of this view because the title is a general one in that it relates to city teacher training schools and also because the presumption of constitutionality is strong. The courts have stated that such section is to be reasonably and liberally interpreted. It does not forbid the inclusion in one bill, under one general title of subjects naturally and reasonably related to each other. See V.A.M.S. Annot., Section 23, Article III.
Your second question asks whether subsection 1 of Section 6 of Senate Bill No. 703 controls over contrary provisions of Sections 169.410 to 169.540. You also note that the latter sections have been amended in part and reenacted by Senate Bill No. 542, Second Regular Session, 79th General Assembly. Such amendments have been approved by the Governor. However, Section169.450, RSMo, which is the prohibition against the State of Missouri contributing funds directly or indirectly to finance the plan to pay retirement allowances by appropriation bills or otherwise, except those funds which the district may receive from time to time under a law or laws providing for a general apportionment of school moneys throughout the state, was not amended by Senate Bill No. 542. In any event, the rule of law is clear that special statutes usually prevail over general statutes in case of repugnancy. State ex rel. Missouri State Life Ins. Co.v. Gehner, 8 S.W.2d 1068 (Mo.Banc 1928). Therefore, in answer to your second question, if there is any repugnancy between the general sections and Senate Bill No. 703, the latter will prevail consistent with the legislative intent.
Your final question asks whether the reference in Section 6 of Senate Bill No. 703, which refers to "persons employed by Harris-Stowe College prior to September 1, 1978", includes persons employed prior to such date by the Board of Regents of Harris-Stowe College appointed under Section 2 of the act or whether it also includes those persons employed by the Board of Education of the City of St. Louis who are assigned to Harris-Stowe College.
Perhaps some lack of clarity may have resulted in this legislation because of the fact that Section 6 of the act was added to the bill after it was introduced.
Section 6 provides:
 "1. Any person employed by Harris-Stowe College prior to September 1, 1978, who is a member of the public school retirement system established in sections 169.410 to 169.540, RSMo, shall remain a member of that system. Any employer contributions required to be made by sections 169.410 to 169.540, RSMo, shall be made by the state of Missouri.
 "2. Any person employed on or after September 1, 1978, as an instructor, teacher or administrator of Harris-Stowe College is a member of the public school retirement system of Missouri created by sections 169.010 to 169.130, RSMo. Any other person employed on or after September 1, 1978, as any employee of Harris-Stowe College is a member of the Missouri state employees' retirement system established by sections 104.310 to 104.550, RSMo."
It is clear that under Section 2 of the act the Governor has until October 17, 1978 to appoint, with the advice and consent of the Senate, a six-member board of regents to control Harris-Stowe College. Also under Section 3 of the act the transition period terminates no later than July 1, 1979, at which time the board of regents shall be responsible for every aspect of the college's operation. Under Section 5 of the act the state is required, effective July 1, 1978, to provide the necessary funds to fully staff and operate the college and make appropriate capital improvements. Considering these dates it seems obvious that the board of regents appointed by the Governor with the Senate's consent conceivably could not take control of the College until after the date of September 1, 1978, had passed. We believe that in interpreting Section 6, it is of no consequence as to whether the person employed "prior to September 1, 1978" was employed by the Board of Regents of the College or by the St. Louis Board of Education at the College prior to the assumption of control of the College by the Board of Regents.
Very truly yours,
 JOHN ASHCROFT Attorney General